Bonczek et al. *v.* Philadelphia, Appellant.

Argued April 16, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*James Francis Ryan*, with him *John J. K. Caskie*, Assistant City Solicitors and *Francis F. Burch*, City Solicitor, for appellant.

· *Philip A. Campbell*, with him *Victor Frey*, of *Frey & Campbell*, for appellee.

OPINION BY MR. JUSTICE STERN, May 13, 1940:

This appeal was allowed in order to review the decision of the Superior Court (138 Pa. Superior Ct. 101) that the City of Philadelphia is liable in damages for an injury sustained by the minor plaintiff in climbing upon and jumping from a dilapidated bench in one of the public squares of the city.

· Several years before the happening of the accident the city had placed in Allegheny Square stationary benches consisting of three concrete supports to which were fastened planks for the seat and the back. One of these benches became badly demolished; the strips forming the back, as well as one of the seat planks, had been torn away, and the supporting posts at the ends of the bench were broken down to the level of the seat. The middle support was inclined backward and the top of it was worn or chipped away, so that there was left exposed an iron reinforcement rod, three-eighths of an

inch in diameter and protruding three inches above the top of the concrete. The seat of the bench was two feet from the ground and the post extended 18 inches above the seat. The top of the post, which was rough and jagged, was three by five inches. The ruinous condition of the bench had existed long enough to charge the city with notice.

Allegheny Square had been used for many years by large numbers of children as a playground. Upon the day of the accident the minor plaintiff, Estelle Bonczek, then seven years of age, together with another girl somewhat older, was playing around this bench, and, in the course of so doing, while she had one foot on the seat and the other on the top of the post, and was about to jump therefrom to the ground, she fell, straddling the top of the post. The projecting iron rod penetrated her body, causing injuries for which she and her parents received a verdict. The trial court, and, on appeal, the Superior Court, held that the jury was justified in finding the city negligent and that defendant was not entitled to judgment n. o. v.

The liability of the city is predicated upon the general principle that one who should reasonably foresee the likelihood of injury to another, to whom he is under a duty of care, from conditions for which he is responsible, is liable for failure to take reasonable precautions to prevent such injury. The duty of care existed in the present case because the minor plaintiff was not a trespasser but an invitee upon a public park or playground of the city.

What was the measure of the city's obligation to this child? To what extent must an owner of land anticipate that children, lawfully on the premises, will convert objects thereon into instrumentalities of play and as a consequence receive injury? Not all of the cases that have dealt with this problem are capable, perhaps, of reconciliation, nor can a precise criterion of liability be formulated. But this at least is certain,—that not

every object which a child may use as a plaything is for that reason to be considered an allurement which demands correspondingly increased precaution on the part of the property owner. Childish propensities are such that the most commonplace things serve them as means of play. It is part of their very nature to climb trees, vault over fire hydrants, jump in and out of parked trucks, swing on gates, and explore any and all promising paths in the search for adventure. It would be unjust, not to say absurd, if, upon children being injured by reason of falls or other accidents in the course of such activities, responsibility should be fastened upon the owners of these or similar innocent objects. Such a liability could not be guarded against, nor would it be justified by the application of any logical concept of negligence. We find, therefore, liability denied in *Guilmartin v. Philadelphia*, 201 Pa. 518, where a boy, on land acquired by the city for a public park, swung upon a gate which fell under his weight; in *Nichol v. Bell Telephone Co.*, 266 Pa. 463, where a child climbed a fence bounding the yard of the premises where he lived and caught his foot in a telephone wire which was strung along the side of the fence; in *Brown v. Scranton*, 313 Pa. 230, where a young girl was injured in a public playground while in the act of climbing over a wire fence; and in *DeFrancisco v. LaFace*, 128 Pa. Superior Ct. 538, where a little boy played on the back of a truck which was parked in a city street and fell from it and was injured.

To come within the class of cases where liability may properly be invoked, two elements must exist,—one, that the object utilized as a plaything is so uncommon and unusual, as far as the ordinary experience of a child is concerned, as to make it peculiarly attractive to his inquisitive instinct, and the other, that his playing in and about the object is reasonably likely to be attended with danger. Thus, liability was held to exist in *Novak v. Ford City Borough*, 292 Pa. 537, where a monument

stood on a grassy mound in a park, boys were wont to climb upon a stone ledge of the monument, within tempting reach of them in that position there was a dangling electric wire, and one of the boys was severely injured by jumping up and grabbing it; in *Reichvalder v. Borough of Taylor*, 322 Pa. 72, where a road scraper, which the children had followed up and down the street during the day, was, at the end of the day, placed on a vacant lot beside the highway without tying or locking the operating mechanism, and, when the children playfully turned the wheels, a boy was caught in the cogs; in *Hogan v. Etna Concrete Block Co.*, 325 Pa. 49, where defendant operated a diminutive railroad track and cars, which naturally had an extraordinary fascination for youngsters, on a lot which children had been using as a playground, and a boy was caught beneath one of the cars; in *Kreiner v. Straubmuller*, 30 Pa. Superior Ct. 609, where beer barrels were piled on the sidewalk in front of a brewery, and a child, climbing thereon, was injured; in *Euler v. City of Pittsburgh*, 85 Pa. Superior Ct. 542, where a reel with lead cable wound around it, intended for use in the city's fire alarm police signal system, was left unblocked and unprotected on the public street, children attempted to ride on top of it, and one of them had his arm crushed by getting it caught between the reel and the wall of a house; and in *Chambers v. Ellis, Inc.*, 104 Pa. Superior Ct. 41, where large iron pipes were placed along the curb of a street near a school house, without wedges to prevent them from moving, and a boy was injured while rolling them to the middle of the street and then permitting them to descend the grade toward the curb. In all of these cases it was the novelty of the objects involved, and the unfamiliarity of children with them, that made it incumbent upon those who placed them where children were accustomed to play to realize the potency of their lure and the likelihood of resulting injury, and therefore to fasten or guard them in such a way as to render them innocuous.

As far as the present case is concerned, if the bench had been in a proper condition of repair it would have been an ordinary object such that the city would have been under no liability for an accident occasioned by a child jumping on or from it. But in its demolished state it was converted from a commonplace to an unusual object, which, by its very condition of dilapidation, peculiarly appealed to children for the purpose of play. The seat, with the inclined post arising from the middle of it, furnished a challenging invitation to them for use as a foothold from which to spring, and the thin iron rod, practically a spearhead, made such use dangerous. The city might not have been able to anticipate the exact nature of a likely accident or the extent of the harm which might be occasioned, but it could readily have foreseen the probability of children playing on or around it and of injury resulting to them. At least the jury was justified in so finding, and the position of the city is all the more indefensible because the condition of disrepair was such that the bench was practically useless as a seat, and therefore its presence in the park served no real purpose.

The judgments of the Court of Common Pleas, affirmed by the Superior Court, are affirmed.

Mr. Chief Justice Schaffer and Mr. Justice Linn dissent.