Krepcho et ux., Appellants, *v.* Erie et al.

Argued April 15, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*Russell M. Orcutt,* with him *James E. Marsh,* of *Marsh, Spaeder, Baur & Marsh,* for appellants.

*Edward M. Murphy,* City Solicitor, with him *Henry R. Jeffs,* Assistant City Solicitor, for appellees.

OPINION BY BALDRIGE, J., July 26, 1941:

The plaintiffs brought this action of trespass against the City of Erie and certain of its officers to recover damages for the death of their five year old son, Thomas Krepcho, who was caught and crushed to death between a large horizontal iron valve wheel and a slowly rotating platform of an outdoor clarifier tank, part of a sewage disposal plant owned and operated by the City of Erie. The trial resulted in a verdict of $1262.25 against the City of Erie alone. The court subsequently granted a motion for judgment n. o. v. Plaintiffs appealed.

The city's sewage disposal plant, erected in 1931, is situate on a plot of ground about 400 feet wide and apparently somewhat longer, bounded on the north by Presque Isle Bay, on the east by the Pennsylvania Soldiers' and Sailors' Home, and on the south and west by the property and tracks of the Pennsylvania Railroad. Access to the defendants' premises is gained by a private road through the Soldiers' and Sailors' Home, which extends to the west of the plant, or by trespassing over the Railroad Company's land.

The plant includes two unenclosed, adjoining clarifier tanks each 90 feet in diameter and 20 feet deep, banked by steep grass covered slopes rising above the surface of the land giving the appearance of a water reservoir. Sixteen sluice gates operated by hand valve wheels

on standards about 3 feet high are located along the western end of the clarifier. On top of each clarifier is a large platform resting on iron wheels which slowly run on a rail circling the clarifier, making a complete revolution every 27 minutes. The motion is imperceptible unless one watches the rotating wheels. A flight of 15 concrete steps with iron side guardrails, as shown by a photograph offered in evidence, leads from the general level of the ground up to the boundary of the clarifier. From there 2 iron ladders lead perpendicularly 4 feet up the concrete wall to the rim of the clarifying tanks.

There were no adult witnesses to the tragedy, but the plaintiff's son, who was in the company of 2 other small boys, was apparently caught between the rotating platform and sluice gate wheel and crushed to death about 4 o'clock on the afternoon of August 9, 1938. Plaintiffs, in their statement of claim, allege that defendants permitted the premises to be used as a playground and that the revolving bridge or platform was an attractive nuisance to children.

If the defendants had countenanced trespassing children at or near the place of the accident to such an extent as to constitute a permissive use thereof the deceased boy was a licensee and the duty was then imposed on the defendants to reasonably safeguard the machinery. If his status rose no higher than that of a trespasser, they owed no duty to him except to refrain from wilful and wanton injury. The plaintiffs' evidence, which we must accept in the most favorable light, showed that ever since the erection of this sewage disposal plant children frequently visited and used portions of the defendants' land and the rough grass plot owned by the railroad company immediately adjacent thereto as a playground. They, at intervals, were seen on top of the machinery near the edge of the tanks where the valves were located. Witnesses testified that

adults and children trespassed daily across the defendants' premises in going fishing, boating, bathing, skating in season, gathering tomatoes, which grew in the sludge, and carrying away the sludge of the sewage for fertilizing purposes.

In such circumstances was the city liable? The nature and extent of its duty depends upon the legal status of the deceased boy. Was he a licensee or a trespasser? If the evidence warranted that he was on the city's premises by permission then he was a licensee. Permission to the use of premises may be either express, to wit, by invitation; or implied. "An invitation differs from permission only in this: an invitation is conduct which justifies others in believing that the possessor desires them to enter; permission is conduct justifying others in believing that the possessor is willing that they enter if they desire to do so." Restatement, Torts, §330.

It has been frequently ruled that a possessor of land is subject to liability for bodily harm to trespassing children of tender years caused by a structure or other artificial condition which he maintains upon the land, where he knows or should know that such children, because of their natural impulses and instincts, are likely to trespass upon and owing to their youth would not discover the condition or realize the risk involved; and that the utility to the possessor of maintaining the condition is slight compared with the risk to the young children: Restatement, Torts, §339; *Rahe v. Fidelity-Phila. Trust Co.*, 318 Pa. 376, 178 A. 467; *Dolena et ux. v. Pittsburgh Terminal Coal Company*, 324 Pa. 228, 188 A. 112; *Hogan et al. v. Etna Concrete Block Co.*, 325 Pa. 49, 188 A. 763; Eldredge, Tort Liability to Trespassers, 12 Temple Law Quarterly 32, 50; 20 R. C. L. §74, p. 84. The modern tendency, however, is to restrict the attractive nuisance rule rather than enlarge its scope: *Powell v. Ligon et al.*, 334 Pa. 250, 5 A. 2d 373.

Mr. Justice Drew stated in *Rahe v. Fidelity-Phila.*
*Trust Co.,* supra, p. 379: "We have been unable to dis-
cover any case in this Commonwealth in which the
rule has been extended beyond vacant lots and other
open grounds." The mere fact that a trespasser is a
child will not of itself impose on the possessor or owner
of land the duty to keep his premises safe: *Pietros v.*
*Hecla Coal & Coke Co.,* 118 Pa. Superior Ct. 453, 180
A. 119.

In *Riebel v. Land Title Bank & Trust Co.,* 143 Pa.
Superior Ct. 136, 17 A. 2d 742, we held that "before
the possessor of land may be held liable for injury to
trespassing children, it must appear that he has negli-
gently maintained the condition which caused the in-
jury, even though the land be a playground. Such
negligence is not to be inferred merely because an
accident has occurred." In the case at bar in order
for the boy to get to the place where he was injured it
was shown by the testimony offered in evidence that
he had to climb 15 steps or mount the high bank and
then ascend the 4 foot perpendicular ladder, so that
the alleged dangerous machinery was not readily ac-
cessible to those using the land for recreational pur-
poses. The character of the machinery and its accessi-
bility are important factors to be considered. The
slowly moving machinery of itself was ordinarily safe
and was being properly operated for the purposes for
which it was designed.

In *Fitzpatrick v. Penfield,* 267 Pa. 564, 109 A. 653,
it is stated: "Ordinarily, the tender age of a child can-
not have the effect of raising a duty where none other-
wise existed, and the rule throughout the United States
is that the mere fact a trespasser is a child will not
create or impose on the owner of a property any duty
to keep his premises safe; especially is this true in this
State, where the owner does not erect on his premises
an attractive appliance, or permit the land to be used

as a playground for such length of time as to presuppose an invitation or permission to occupy the premises in this manner. When so used, ordinary care must be exercised to keep the premises in safe condition ...... The amount of use that will bring otherwise private ground within the playground rule must depend to a large extent on the circumstances of each case. It may be said that the use contemplated is such as to cause the place to be generally known in the immediate vicinity as a recreation center, and its occupancy should be shown to be of such frequency as to impress it with the obligation of ordinary care on the part of the owner." See, also, *Gilmartin v. City of Philadelphia*, 201 Pa. 518, 51 A. 312; and *United Zinc & Chemical Com. v. Van Britt*, 258 U. S. 267.

In *Dolena et ux. v. Pittsburgh Terminal Coal Company*, supra, a child was drowned in a tank 20 feet high and about the same distance in diameter where water was stored for mining operations. Boys living in that neighborhood had been swimming in this water for several years despite the attempts of defendant to stop them. To reach the water it was necessary to climb up the side of the tank on the iron bands which held it together. Judgment was entered for the defendant n. o. v. The court there said: "It is clear that a property owner is not liable in damages where an infant trespasser meets his death on or about a structure such as this. (citing cases) Here, as in *Gilmartin v. Philadelphia*, supra, the death of the boy was brought about, not by a breach of defendant's legal duty, but by his 'venturing in childish recklessness, where no one, child or adult had any business to be.' "

We think it cannot be said that this sewage disposal plant was an attractive nuisance and that the city was required to anticipate that a venturesome boy would be fatally injured by the machinery it had erected. While the land owned by the Pennsylvania Railroad

Company was generally used as a place of recreation, this large structure, which, with the "out-fall" sewer, cost in the neighborhood of two million dollars, could not be said to be for that purpose. Assuming that the inaccessible machinery would attract curious children its maintenance and operation were not equivalent to an invitation to go upon it. The doctrine of attractive nuisance is applicable only when there is proof that the appliance or condition in question is so accessible that it should be reasonably anticipated that the children will come to it. The possibility of children reaching it is not enough: 45 C. J. §166, p. 768. "It is not sufficient that the instrumentality or condition may be a source of danger to children, but it must be of such a nature that danger to children is reasonably to be apprehended; and, in the absence of circumstances indicating to the owner or person in charge a reasonable likelihood of danger, the doctrine of attractive nuisance does not apply: 45 C. J. 764." *Colligen v. Phila. Electric Co.*, 301 Pa. 87, 92, 151 A. 699.

While it is true that children did go upon this machinery the evidence shows that when they were discovered thereon they were ordered away. The deceased boy when injured was at a place not easily accessible where he had no right to be. It is stated in *Rapczynski v. W. T. Cowan, Inc.*, 138 Pa. Superior Ct. 392, 398, 10 A. 2d 810: "The 'attractive nuisance' doctrine can be carried to such an extent that every owner will be made an insurer against injury caused to a minor by any property, real or personal, that the owner may possess. Scarcely any object can be named that does not have some attraction for a child and the younger the child the more varied are his inclinations and the objects which appeal to him."

A careful consideration of the record fails to convince us that the learned court below erred in entering judgment for defendants. It is unnecessary, in view of the

foregoing conclusion, to discuss the defense that the City ,of Erie is not liable as it was exercising a governmental rather than a proprietary function, other than to say we think it is without merit: *Stevens v. Pittsburgh,* 129 Pa. Superior Ct. 5, 194 A. 563; *Reichvalder et ,al., v. Borough of Taylor,* 120 Pa. Superior Ct. 217, 181 A. 864, affirmed by the Supreme Court in 322 Pa. 72, 185 A. 270; *Honaman v. Philadelphia,* 322 Pa. 535, 185 A. 750.

Judgment affirmed.