Potanko *v.* Sears, Roebuck & Company, Appellant.

Argued September 27, 1951. Before DREW, C. J.,
STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Robert B. Wolf,* with him *Leon Solis-Cohen, Jr., Alfred L. Wolf, Abraham L. Freedman, Donald B. Hirsch, Wolf, Block, Schorr & Solis-Cohen* and *Sachs & Caplan,* for original defendant, appellant.

*James J. Burns, Jr.,* for additional defendants, appellants.

*Emanuel Goldberg,* for plaintiffs, appellees.

OPINION BY MR. JUSTICE LADNER, November 15, 1951:

These appeals arise out of an action brought by John Potanko, a minor, by his father as guardian and by his parents in their own right, against the defendant, Sears, Roebuck & Company, to recover damages for injuries suffered by the minor plaintiff in his own home when a radiator, not yet installed, fell on him. The complaint charged negligence on the part of Sears, Roebuck & Company from whom the radiator was purchased. Sears brought in as additional defendants, Martha K. Harrison and George D. Shields, trading as Harrison-Shields, the carriers who delivered the radiator.

The jury returned a verdict for the adult plaintiffs and for the minor plaintiff against Sears and also a verdict in favor of Harrison-Shields. The learned court below refused Sears' motion for judgment n.o.v. but granted the motion of the plaintiffs for a new trial as against both original and additional defendants. From this action of the court below both Sears, original defendant, and Harrison-Shields, additional defendants, took the appeals now before us.

The circumstances, as they appear from the undisputed testimony, are as follows: Adult plaintiffs in May, 1947, purchased from Sears by written contract materials for a heating system. The contract provided that a separate licensed contractor would install said materials and that Sears would not install the heating system but that by acceptance of the proposal the purchaser agreed to employ the named contractor.[1] The contract did, however, contain but one price which included the materials, delivery of the materials and their installation.

On August 14, 1947, eight radiators were delivered by the employes of Harrison-Shields to the home of the adult plaintiffs. Each radiator was placed by the driver with his helpers in the rooms that were designated on tags attached by Sears to the radiators. The radiator which caused the injury was placed in an upright position in front of the window of plaintiffs' dining room on the second floor of their house by Harrison-Shields employees where it stood for two days.

---

[1] This portion of the contract between Sears and the Parent Plaintiff reads: "INSTALLATION. A. Brucker a duly licensed Contractor (hereinafter for convenience called the 'Contractor') hereby offers to install said materials in accordance with said specifications at the price indicated below for such installation, which also includes any charges which Sears may make in respect thereto. It is understood that Sears will not install the heating system, but that by the acceptance of this proposal you employ the above named contractor to make the installation. It is also understood that by your acceptance hereof, you request and direct that when the installation has been completed, Sears pay to said contractor on your behalf the contractor's charge for such installation, in consideration for which you agree to pay Sears the amount of the contractor's installation charge as shown (the cash or the time payment price, whichever is applicable), at the same time and in the same manner that the materials purchased are to be paid for by you."

The minor plaintiff, who was 9 years of age at the time of the trial and 7 at the time of the accident, testified he went into the room to get a drink of water, brushed against the radiator and it fell on his leg. The radiator was four inches wide, five feet long, 33 inches high, stood on four legs, two inches high, and weighed 400 pounds.

Judge MONTGOMERY, the trial judge, in his opinion for the court en banc, correctly stated the rest of the pertinent evidence most favorable to the plaintiffs as follows: "The evidence offered by the plaintiffs as to who delivered the radiator was given by the adult plaintiffs who stated three unidentified men made the delivery, and by Joseph Danner, an employee of additional defendant Harrison-Shields, called as a plaintiff witness. Danner was the driver of the truck owned by Harrison-Shields that made the delivery. He stated he had picked up the load of eight radiators at Sears, Roebuck & Company on August 14 on a Bill of Lading issued August 12, and that he delivered them by placing them underneath windows in the rooms indicated on the tag attached to each radiator; that after delivery, Mrs. Potanko signed the Bill of Lading; that he had three helpers on his truck, all employees of Harrison-Shields and that no one was there to direct him where to place the radiators but he put them under the windows because, 'They always wanted it under the windows' where he had placed them for the last nine or ten years.

"The original defendant offered no evidence and the additional defendant offered the testimony of Mr. Shields that they had been hauling radiators for Sears, Roebuck & Company for twenty years and customarily placed them in the rooms designated by the attached tags but in locations designated by the customers; that Harrison-Shields is a common carrier li-

censed by the Pennsylvania Public Utility Commission and Interstate Commerce Commission; and deliveries were made under uniform Bills of Lading.

"From all of the evidence submitted there is nothing to connect Sears, Roebuck & Company with the manner the radiators were placed in the home of plaintiffs. The most that can be said is the Sears, Roebuck & Company requested inside delivery and designated the rooms in which they were to be placed; and if we interpret Mr. Danner to mean Sears, Roebuck & Company when he said, 'They wanted them under the windows' that would mean that Sears, Roebuck & Company requested that they be placed under windows in the respective rooms. There is no evidence that Sears, Roebuck & Company requested that the radiators be set up in any way or manner. Under all the evidence it therefore, must be concluded that Harrison-Shields, through its agent Danner, was wholly responsible for the manner the radiator was set up, whether upright or on its side, whether secure or insecure.

"This is not a situation where the control over Harrison-Shields' employees was in any fashion exercised by Sears, Roebuck & Company so as to compel submission to the jury of the question of whether they were agents of Sears, Roebuck & Company, Harrison-Shields or both, under such decision as Dunmire v. Fitzgerald, 349 Pa. 511; Siidekum Admr. v. Animal Rescue League of Pittsburgh, 353 Pa. 408; Nunley v. Enos et al., 362 Pa. 199 and Johnson Admr. v. Angretti et al., 364 Pa. 602. In fact, the jury was instructed that since the Bills of Lading provided for 'inside' delivery: 'Their (Sears, Roebuck & Company) supervision and control over the equipment, of course, had been transferred to this carrier as an independent agency from the time at least when it was delivered to the carrier until, in turn, it was delivered to the premises

of Potanko.' It is recognized that the meaning to be applied to the instructions 'Inside delivery' was left to the jury but under the evidence as we have just discussed it, we now are of the opinion that under any interpretation Sears, Roebuck & Company is not responsible for the manner in which the radiator was left, regardless of location.

"No other act of negligence is alleged in this case nor has any other been referred to, except the setting of the radiator in an insecured, upright position. For this reason there is no cause to consider any other theories to sustain plaintiffs' verdict. It is nowhere indicated that Sears, Roebuck & Company was negligent in supplying a dangerous or defective radiator for delivery nor is there any evidence that it knew the radiator had been placed in a dangerous position by its carrier."

We agree with what the court en banc stated in the foregoing portion of its opinion and we conclude under the authorities cited binding instructions should have been given and therefore judgment n.o.v. must be entered so far as Sears, Roebuck & Company is concerned.

The plaintiff, in its motion for a new trial, conditioned it as follows: "In the event either the Motion For New Trial or the Motion For Judgment N. O. V., filed by Sears, Roebuck and Company, the original Defendant, should be granted, a new trial should also be granted the Plaintiffs as to Martha K. Harrison and George C. Shields, trading as Harrison-Shields, Additional Defendants."

While the court below was not bound to entertain such a conditional motion for a new trial yet we will not say that it is beyond the power of a nisi prius court to do so. This would seem to follow the immemorial power of a trial court to grant a new trial: "sua

sponte" whenever in its opinion the justice of the particular case so requires and even if neither party to the record has filed a motion for a new trial: *Fisher, Exr. v. Brick,* 358 Pa. 260, 56 A. 2d 213 (1948), subject, of course, to review by this court if abuse of discretion is shown or error of law committed: *Bellettiere v. Philadelphia,* 367 Pa. 638, 81 A. 2d 857 (1951), in which the "new trial appeal cases" were recently reviewed.

The learned court below explained that in view of this motion, believing the verdict as rendered could not be said to be a finding of no negligence, in order to accomplish substantial justice a new trial should be granted as to both defendants. However if binding instructions would have been proper as to either or both of the defendants obviously a new trial ought not to have been awarded.[2] We think it would serve no purpose to require a new trial so far as Sears is concerned. This because there was not and cannot be any dispute over the fact that Harrison-Shields was an independent contractor whose employees were not under the control of Sears at the time the radiator was delivered nor at the time of the accident. In such circumstances, Mr. Justice HORACE STERN well said in *Johnson, Admr., v. Angretti,* 364 Pa. 602, 607, 73 A. 2d 666 (1950), "Where such an issue arises it is usually determinable by the jury upon consideration of all the evidence, but where the facts are not in dispute and the evidence presents no question of credibility and leaves no sufficient ground for inconsistent inferences of fact it becomes the function of the court to determine the precise nature of the relationship: Joseph v. United Workers Association, 343 Pa. 636, 639, 23 A. 2d 470, 472, 473; Thomas v. Bache, 351 Pa. 220, 237, 40 A. 2d 495,

---

[2] *Carrol v. Pittsburgh,* 368 Pa. 436 and cases there cited.

503; Feller v. New Amsterdam Casualty Co., 363 Pa. 483, 486, 70 A. 2d 299. 300, 301."

There remains the question of whether the court below abused its discretion in granting a new trial as to Harrison-Shields: *Bellettiere v. Philadelphia,* 367 Pa. 638, 81 A. 2d 857 (1951) (where this court recently upheld the grant of a new trial as to an exculpated additional defendant). The additional defendants argue that there was not sufficient testimony to support a finding of negligence on their part and that for this reason the court below abused its discretion.

Although the case is a very close one, we are of the opinion that their negligence was a jury question. There was testimony that this heavy and narrow radiator was placed in an upright position on a sloping floor. The actual measurement disclosed a slope of $1\frac{1}{4}$ inches two feet from the wall and $1\frac{3}{4}$ inches in four feet. Despite the fact that such slope was not noticed either by the employees of the additional defendants or the father plaintiff, it was for the jury to say whether the slope should have been discerned and whether it was negligence to place a heavy unsecured radiator in an upright position on such a slope. Such testimony brings this case within the following line of cases in which it was held that the question of negligence was for the jury: *Farbarik v. Jones,* 67 Pa. Superior Ct. 517 (1917); *Straight, Admr., v. B. F. Goodrich Co.,* 354 Pa. 391, 47 A. 2d 605 (1946); *Kulka v. Nemirovsky,* 314 Pa. 134, 170 A. 261 (1934).

However, the testimony is uncontradicted that both parents had two days to notice the precarious position of the radiator and the fact that in such position it might tip over. The parents also knew of the vibrations in the house caused by the surrounding commercial and transportation enterprises. (There is no evidence that they called this condition to the attention of the em-

ployees of Harrison-Shields.) If the employees of Harrison-Shields should have observed the slope in the floor and placed the radiator on its side, it is *a fortiori* that the parents should also have taken this precautionary measure. Under the circumstances there can be no recovery by the parents on the cause of action in their own right because their own evidence establishes as a matter of law their contributory negligence. However, such negligence cannot be imputed to the minor plaintiff: *Erie Pass. Railway Co. v. Schuster,* 113 Pa. 412, 6 A. 269 (1886).

The order of the court below granting a new trial as to both original and additional defendants must be modified and therefore the case is remanded with directions to enter judgment non obstante veredicto as to Sears, Roebuck & Company, enter judgment on the verdict for Harrison-Shields in the action by the parents in their own right and award a new trial as to Harrison-Shields for the cause of action of the minor plaintiff.

Mr. Justice BELL dissents to the grant of a new trial to the minor plaintiff.