Hill *v.* Allentown Housing Authority, Appellant.

Argued January 7, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and ARNOLD, JJ.

*Linn H. Schantz,* for appellant, submitted a brief.

*Henry L. Snyder,* with him *Snyder, Wert & Wilcox,* for appellees.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, March 23, 1953:

Of the many questions originally involved in this litigation defendant on the present appeal has eliminated all but one, namely: Was the maintenance of a refuse dump by the Housing Authority of the City of Allentown the exercise of a governmental function so as to render the Authority immune from liability for negligence?

The Authority constructed and operated a housing unit known as Hannover Acres, and on premises owned by it immediately adjacent thereto it maintained a dump for the deposit of the ashes and rubbish of its tenants. The dump was quite large, constituting part of an abandoned quarry pit. It was not adequately enclosed by a fence or barrier. The rubbish deposited there consisted of paper, cartons, boxes, tin cans, bottles, glass, furniture, ashes, pieces of iron, newspapers, mattresses, sofas, bicycles, tires, broken wheels and toys; some of it was inflammable and occasionally fires raged on the dump. The children of the tenants were accustomed to play on and around it. One afternoon the minor plaintiff, then 7 years of age, was searching there for junk; his clothing caught on fire and he sustained severe burns about his body which resulted in serious permanent injury. In the present suit brought by his father against the Authority on his behalf, and

in his own right, the court, sitting without a jury, found a verdict in favor of the father in the sum of $18,000 and as guardian of his minor son in the sum of $30,000. From the judgments entered on those findings defendant appeals, but, as above stated, it argues as the sole question involved whether it is subject to liability for negligence in view of the nature of the function which it performs as a public agency.

It is undoubtedly true as stated by Mr. Justice LINN in *Honaman v. Philadelphia*, 322 Pa. 535, 537, 185 A. 750, 751, that the distinctions in the law determining tort liability of municipal corporations arising out of the exercise, on the one hand, of so-called governmental functions, and, on the other, of corporate or proprietary functions, have long been in a state of confusion and uncertainty. Indeed the decisions on this subject have been more or less arbitrary, and not wholly consistent with one another, perhaps because they have been based primarily on practical considerations of public policy rather than on any principles of logic. What at least is firmly established is, that, in the case of acts of municipalities performed as functions of government delegated by the State to its agencies as public instrumentalities, there is immunity from such liability, whereas in the case of acts of municipalities performed in their proprietary or business capacity the doctrine of respondeat superior applies and liability exists. The real difficulty, however, arises in determining whether, in any given case, the activity in question is governmental or proprietary in its nature.

The Housing Authorities Law of May 28, 1937, P. L. 955, created Authorities for the proclaimed purpose of providing safe and sanitary dwelling accommodations for persons of low incomes. The powers granted to them are enumerated at great length in section 10 of the Act, one of which (clause j) is, "To arrange with

. . . any county, city or other municipality of the State . . . to cause the services customarily provided by each of them to be rendered for the benefit of such housing authority, or the occupants of any housing projects of the Authority; and . . . to provide and maintain parks . . . sewerage, . . . water, and other municipal facilities adjacent to, or in connection with, housing projects." Parallel with this provision is section 4 of the Housing Cooperation Law of May 26, 1937, P. L. 888, which provides that "For the purpose of aiding and cooperating in the . . . operation of housing projects located within the area in which it is authorized to act, any State public body may upon such terms, with or without consideration, as it may determine . . . cause . . . community facilities . . . to be furnished adjacent to or in connection with housing projects."

From these provisions in regard to the authorized activities of Housing Authorities it is to be noted that, while they are not forbidden to furnish to their tenants ordinary municipal facilities, they are not required to do so but may procure them by arrangement with a county, city or other municipality of the State. While, therefore, a Housing Authority is undoubtedly a public body "exercising public powers of the Commonwealth as an agency thereof" (section 10 of the Act) and accordingly may, perhaps, be regarded as exercising a function of government in providing dwelling accommodations for persons of low income, it does not by any means follow that if it chooses to extend its activities by itself furnishing ancillary services instead of contracting to obtain them from other public bodies of the State it can thereby extend its tort immunity over the field of all such assumed activities by the contention that in furnishing such services it is exercising a governmental function. Here the maintenance of the dump was not necessary to carry out

the legislative mandate of providing dwelling house accomodations for persons of low income; at most it may have constituted·a convenience for the tenants.

It would seem reasonably inferable from the welter of decisions on the subject that the mere maintenance of a refuse dump, as in the present case, on land owned by a public agency, is not such an activity as constitutes the performance of a governmental function, but that, on the contrary, a municipality or other public body owning land is legally responsible for the maintenance of it in a safe condition to the same extent as any private owner. Thus tort liability has been imposed on municipal corporations in connection with parks, playgrounds, swimming pools, city-owned buildings, fire-houses, incinerators, and vacant lots.

In *Briegel v. City of Philadelphia,* 135 Pa. 451, 458, 459, 19 A. 1038, 1039, it was said by Mr. Justice MITCHELL: . . . "in the class of cases to which the present belongs, injuries arising from the misuse of land, there has never been any substantial hesitation in holding cities liable. The ownership of property entails certain burdens, one of which is the obligation of care that it shall not injure others in their property or persons, by unlawful use or neglect. This obligation rests, without regard to personal disabilities, on all owners alike, . . . by virtue of their ownership, and municipal corporations are not exempt." In that case water seeped into premises adjoining a school building owned by the city because of a defectively constructed privy well on the city's property.

In *Barthold v. Philadelphia,* 154 Pa. 109, 26 A. 304, the city was held liable for negligently failing to guard from children a pool of water on ground which it owned.

In *Glase v. Philadelphia,* 169 Pa. 488, 32 A. 600, the city was made responsible for negligence in the

maintenance of the cover on a manhole on land of the Fairmount Water Works which the city owned.

In *Kies v. City of Erie,* 169 Pa. 598, 32 A. 621, a similar liability was imposed upon a municipality for maintaining the doors of one of its fire-engine houses in such manner that they would swing violently outward over the sidewalk of a street.

In *Honaman v. Philadelphia,* 322 Pa. 535, 185 A. 750, it was held that in maintaining parks and playgrounds a city acts in its proprietary capacity and is therefore liable for failure to exercise reasonable care; there was cited with approval the statement from 2 Dillon, Mun. Corp., 3d ed., §985, that ". . . municipal corporations, are liable, for the improper management and use of their property, to the same extent and in the same manner as private corporations and natural persons."

In *Weber v. Harrisburg,* 216 Pa. 117, 64 A. 905, in *Novak v. Ford City Borough,* 292 Pa. 537, 141 A. 496, in *Paraska v. Scranton,* 313 Pa. 227, 169 A. 434, in *Bonczek v. Philadelphia,* 338 Pa. 484, 13 A. 2d 414, and in *Styer v. Reading,* 360 Pa. 212, 61 A. 2d 382, it was held that where a city undertakes to manage and supervise property, such, for example, as a public park, it must exercise reasonable care to keep the property in reasonably safe condition for those who lawfully come upon it, including the policing of it sufficiently to protect children from dangers in connection with their entrance and play thereon.

In *Siwak v. Borough of Rankin,* 72 Pa. Superior Ct. 218, a borough was held liable for vapors and stenches that resulted from its ownership and operation of an incinerating plant for the disposal of the refuse of the borough, whereby neighboring dwellings were rendered uninhabitable.

In *Stevens v. Pittsburgh,* 129 Pa. Superior Ct. 5, 194 A. 563, where it was held that the measure of care

arising out of the ownership and maintenance of a park by a municipality is the same as that which would rest upon a private owner of the same property, it was said (p. 19, A. p. 569) : "The breach of duty here was ... a failure in its proprietary capacity as a landowner to abate a dangerous condition existing upon its property of which it had notice. That the only way to abate the nuisance might incidentally be through the use of its police officers or other employees does not make the breach of duty essentially a failure to exercise a governmental function."

In *Krepcho v. Erie*, 145 Pa. Superior Ct. 417, 424, 21 A. 2d 461, 465, the court expressed the opinion that the operation by the defendant municipality of a sewerage disposal plant was the exercise of a proprietary, not a governmental, function.

In accordance with all these decisions, it would seem clear that if the defendant Authority chose to create or suffer to exist a dangerous condition on land in its possession and control, its liability to one injured thereby would be the same as would attach to a private owner under the same circumstances. It is true that in *Scibilia v. Philadelphia*, 279 Pa. 549, 124 A. 273, and *Bandos v. Philadelphia*, 304 Pa. 191, 155 A. 279, it was held that the removal of ashes and refuse by a municipality is a governmental function designed primarily to promote the public health and that therefore no recovery can be had for negligence in its performance. Apart, however, from the fact previously pointed out that activities of this nature were not imposed by the statute upon Housing Authorities and therefore could not be said to be exercised by them in their capacity as governmental agencies, the *Bandos* and *Scibilia* cases were different from the present one in that there the persons injured were struck by a vehicle of the city engaged in conveying ashes and refuse to

one of the city's dumps; the question involved, therefore, was not concerned, as here, with the duty imposed upon public bodies as well as upon private individuals in connection with their possession and control of land. Undoubtedly a public agency actively engaged in the performance of a governmental function may be immune from liability for negligence in the maintenance of its land or building on or in which the activity is conducted, as in *Hartness v. Allegheny County*, 349 Pa. 248, 37 A. 2d 18. But this defendant Housing Authority was not engaged in the performance of a governmental function in the mere passive use of its land for the storage of its tenants' rubbish, and therefore it is not excused from liability for its now admitted negligence in failing to guard its dump against the intrusion of immature children.*

Judgments affirmed.

---

* In *Gourley v. Pittsburgh*, 353 Pa. 112, 44 A. 2d 270, the minor plaintiff was killed by being buried under a slide of slag on a dump maintained by the city on which ash, hauled from the city's incinerator plant, was deposited. It was held that the evidence was insufficient to sustain a finding that the property was a permissive playground and that the city was negligent, but it is of interest to note that, had the court been of opinion that the city, even if negligent, would not have been liable on the ground that the maintenance of the dump was the performance of a governmental function, the lengthy discussion of the question of negligence, upon which the decision was based, would obviously have been unnecessary.