Kunz *v.* Titusville, Appellant.

Argued April 1, 1953. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Stuart A. Culbertson,* with him *Rowland B. Mahany,* for appellant.

*F. Joseph Thomas,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, May 25, 1953:

This appeal involves once again the question whether a given activity of a municipality partakes of the nature of a governmental or a proprietary function; if the former, the municipality is immune from tort liability; if the latter, it is legally responsible for injury caused by the negligence of its employes.

Plaintiff conducted a business of collecting garbage and rubbish from business places in the City of Titusville and hauling it to an incinerator plant owned and operated by the city. On the occasion in question he took such a load to the incinerator in his truck, which he backed up to the charging hole just inside the incinerator building; he then left the cab, stepped onto the bed of the truck, and let down the tailgate so that it extended out even with the floor of the truck. Standing with one foot on the tailgate and one foot on the bed of the truck, he began shoving the refuse material into the hole. While thus stationed he felt a jarring of the truck, lost his balance, and fell into the hole upon the hot ashes. His helper, together with one Frank Nelson, a city employe, tried to pull him out. While they were so engaged another employe of the city who was in the basement started to raise the furnace door in an

endeavor to reach him at that lower level, but meanwhile the two men working at the top had managed to extricate him. He was badly burned. He started to "bawl out" both his helper and Nelson because he thought they had not rescued him as quickly as they should have done; he alleges that thereupon Nelson said "he was sorry he shook the truck and knocked me off, he didn't intend to," and that his reason for doing it was to "stop throwing the stuff in there." During the time plaintiff was on the truck shoveling the garbage into the hole Nelson was standing near the cab of the truck with a broom in his hand apparently engaged in sweeping some of the debris from the pavement into the hole. No one actually saw him strike or shake the truck.

Plaintiff brought suit against the City of Titusville to recover for his injuries. He obtained a verdict from the jury but filed a motion for a new trial on the ground that the verdict was inadequate. The city, on the other hand, filed a motion for judgment n.o.v. The court overruled the city's motion but granted that of plaintiff, whereupon the city took the present appeal.

Plaintiff argues that, since the court granted him a new trial, its overruling of defendant's motion for judgment n.o.v. cannot be considered on this appeal. There is no merit in this contention. It is true that if the reason for the granting of the new trial had been to correct trial errors or to allow plaintiff to produce additional testimony in order, in either event, to enable him, if possible, to establish defendant's liability, its refusal to grant defendant's motion for judgment n.o.v. might not be reviewable. But since, in the present instance, the new trial was granted solely on the ground of inadequacy of the verdict whereas the fundamental issue in the case is whether there can be any liability

on the part of the city for the happening of an accident in connection with the operation of its incinerator plant, it would obviously be a wholly futile proceeding to proceed to a new trial if defendant was entitled to binding instructions and therefore to the granting of its motion for judgment n.o.v. Thus it was said by Mr. Justice LINN in *Brogan v. Philadelphia,* 346 Pa. 208, 210, 29 A. 2d 671, 672; "If, however, it appear that, as matter of law, there is no liability on the part of a defendant, a new trial as to such defendant should not be granted. Such non-liability appearing, the defendant should not be subjected to the expense and inconvenience of again demonstrating that in law he was not liable. If the point is properly raised, the action of the court in refusing to direct a verdict and in granting a new trial will be reviewed." See also *Potanko v. Sears, Roebuck & Co.,* 368 Pa. 582, 589, 84 A. 2d 522, 525.

Several comparatively subordinate questions were raised both in the trial court and on this appeal affecting the determination of the question of the city's liability for the happening of this accident. Thus the city points out that there was no testimony that the jarring of the truck was caused by Nelson other than his alleged statement that he had shaken the truck, and it contends that that acknowledgment of responsibility was inadmissible because, being made after the happening of the occurrence, it could not bind his employer unless it were a part of the res gestae, and that in view of the time at which it was made its admission was not justified on that ground. The city also argues that even if Nelson made such an admission he was not on duty at the time of the accident, his regular hours of employment having transpired long prior thereto. Plaintiff, on his part, contends that, apart from Nelson's jarring the truck, he was negligent in not acting with

sufficient promptness in helping to extricate him from the hole, and, further, that the opening of the furnace door while plaintiff was in the fire pit was a negligent act in that it created a draft that ignited the refuse and caused a flare-up of the flames whereby he suffered his burns.

Whatever be the merits of these rival contentions, the vital issue in the case is, as already stated, whether the city can, in any event, be held liable for the alleged negligence of one of its employes in connection with the occurrence of the accident. Concretely, that question depends on whether the operation of the incinerator plant was in pursuance of a governmental or proprietary function of the municipality. In *Honaman v. Philadelphia*, 322 Pa. 535, 537, 185 A. 750, 751, Mr. Justice LINN pointed out the state of confusion existing in the law in reference to that distinction, and in *Hill v. Allentown Housing Authority*, 373 Pa. 92, 94, 95 A. 2d 519, 520, we said that "the decisions on this subject have been more or less arbitrary, and not wholly consistent with one another, perhaps because they have been based primarily on practical considerations of public policy rather than on any principles of logic." However, this much at least is clear, that, in the leading case of *Scibilia v. Philadelphia*, 279 Pa. 549, 124 A. 273, and again in *Bandos v. Philadelphia*, 304 Pa. 191, 155 A. 279, this court definitely held that the gathering and disposal of refuse and ashes is primarily a health measure and therefore the exercise of a public or governmental function within the police power, —a ruling which prevails also in the great majority of other jurisdictions, it being stated in 63 C.J.S. 85, §777. b. that the collection, removal and disposal of garbage and other refuse are generally held to be governmental functions in the performance of which the municipality incurs no liability for the acts of its

employes if a nuisance is not created* and if the municipality does not voluntarily undertake such services as a commercial enterprise. Since the public or governmental nature of such functions applies to the disposal of the ashes and refuse as well as their collection and removal, and since the incinerator is the instrumentality for accomplishing that purpose, there is obviously no escape from the conclusion that any accident which occurs in connection with the operation of the incinerator imposes no liability upon the municipality. It is true that in the per curiam opinion in *F. J. Kress Box Co. v. Pittsburgh*, 333 Pa. 121, 4 A. 2d 528, it was said that "The erection and operation of the incinerator plant by the city was in its proprietary capacity," and that in *Krepcho v. Erie*, 145 Pa. Superior Ct. 417, 424, 21 A. 2d 461, 465, where a boy was crushed to death in the operation of a clarifier tank which was part of a sewerage disposal plant operated by the municipality the court said that it was unnecessary "to discuss the defense that the City of Erie is not liable as it was exercising a governmental rather than a proprietary function, other than to say we think it is without merit." Not only, however, were these expressions mere dicta, but they were wholly without justification in view of the decision in the *Scibilia* case.

It may not be amiss here to point out the distinction between the present case and that of *Hill v. Allentown Housing Authority*, 373 Pa. 92, 95 A. 2d 519, recently decided. There it was held that the mainte-

---

* A municipal corporation is liable, of course, for damages sustained by reason of the creation or maintenance of a *nuisance* in the performance of the work of collecting, removing and disposing of garbage and other refuse: *Briegel v. City of Philadelphia*, 135 Pa. 451, 19 A. 1038; *Siwak v. Borough of Rankin*, 72 Pa. Superior Ct. 218; 63 C.J.S. 69, §770. b. (2).

nance of a refuse dump by a housing authority for the convenience of tenants of a housing unit which it operated was not an exercise of a governmental function so as to render it immune from liability for negligence in policing the dump. The fact was that small children were accustomed to play on and around the dump and a seven-year old boy searching on it for junk was severely burned. The case was decided on two grounds: (1) that in maintaining the dump the housing authority was not performing any public obligation but was merely furnishing voluntary services instead of contracting to obtain them from other public bodies of the State; and (2) that it was the duty of the housing authority, as the owner of the land on which the dump was maintained, properly to manage and guard it to the same extent and in the same manner as private corporations and natural persons would be obliged to do; (*Honaman v. Philadelphia*, 322 Pa. 535, 539, 185 A. 750, 751; *Powers v. City of Philadelphia*, 18 Pa. Superior Ct. 621). Had the accident there occurred during the operation of collecting or transporting the refuse or unloading it on the dump, a different legal situation would obviously have been presented. In order for a municipality to be immune from tort liability it is necessary that the negligence of the employe which causes the accident should occur in the course of the performance of the governmental activity involved. That is what happened in the present case.

The order of the court below granting a new trial is reversed, and the record is remanded with direction to enter judgment for defendant non obstante veredicto.

———

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I believe that *Hill v. Allentown Housing Auth.*, 373 Pa. 92, filed March 23, 1953, overrules in principle

*Scibilia v. Philadelphia,* 279 Pa. 549, handed down March 10, 1924. I believe further that the facts in several of the cases enumerated in the Hill decision do not go as far as those in the case at bar in supporting liability for a purely proprietary function and operation.

I am also of the opinion that if a municipal corporation is liable for damages sustained in the creation or maintenance of a nuisance while collecting, removing and disposing of garbage, (*Briegel v. City of Philadelphia,* 135 Pa. 451,) it is equally liable in the negligent operation of an incinerator plant consuming and destroying garbage collected in the city.

For these reasons and those which naturally flow from them, I dissent.