## McCombs v. City of McKeesport

*Stokes & Lurie,* for plaintiff.

*William Moldovan,* City Solicitor, for defendant.

ALPERN, J., March 5, 1957.—In each of the above entitled cases, the court en banc had before it the question of the sufficiency of the complaints filed by the respective plaintiffs. Preliminary objections were raised by defendant and were sustained. In its order sustaining the objections, the court directed that judgment be entered if plaintiffs did not file sufficient amendments to the complaints. The court directed that the complaints, if amended, be considered by the same court en banc in order to avoid further delay in the disposition of the litigation.

Plaintiffs have amended their complaints. The matter before the court concerns the disposition of the cases under the amended pleadings.

Plaintiffs all lived within the city limits of McKeesport in an area not serviced by the city water system. Plaintiffs had for some time relied on an open spring for all their water supply. Plaintiffs had requested the City of McKeesport to extend the lines of its municipally owned water system so as to service them, but the city had refused to do so.

On or about November 13, 1953, the open spring on which plaintiffs relied for their water, became dry. Plaintiffs, on or about this same date, requested the city to supply them with water. As it had done on five other occasions, the City of McKeesport Fire Department ran a hose from the nearest fire plug and filled up the spring. The city furnished water in a makeshift emergency fashion and not in the course of its operation of the water business. It furnished this emergency water supply through the fire department free, solely for the purpose of meeting a community health hazard due to the emergency created by the drying up of the private neighborhood spring that was the sole source of the supply of water for drinking and hygienic pur-

poses for this group of persons not served by the City of McKeesport. The City of McKeesport had refused to extend its lines for plaintiffs, but did not refuse to furnish emergency service on this occasion, as it had on other occasions when emergencies were met in the same fashion. A few days after using the water taken from the spring, several of plaintiffs were taken ill of typhoid fever. As a result of the fever, the daughter of two plaintiffs died.

At the prior argument of the cases, plaintiffs and defendant emphasized the distinctions between the governmental and proprietary functions of a municipality. It was, and still is, the contention of defendant that in these particular circumstances the city was in the exercise of one of its governmental functions and is immune to tort liability. Plaintiffs urged, and still urge, that the city, supplying water, exercises merely a proprietary function and that, therefore, it is liable in damages for the negligence of its servants.

The amendments to the complaints, however, make is clear that under the stated facts the city was exercising its *police power* in protecting the health of its citizens.

Plaintiffs, in their final amendments, take the position that, when the City of McKeesport furnished the water on an emergency basis, it did not do so by extending the water main of its proprietary water department to their individual homes and serving each of them by meter or flat rate, but, to the contrary, caused the fire department to fill up the neighborhood spring by running a hose from the nearest fire plug. Patently, the fire department is maintained for the purely governmental function of promoting the public safety through the extinguishing of fires. It was used in this emergency for the performance of the governmental function of the promotion of public safety through the elimination of the threat to the public health and safety by reason of the absence of water in

a particular area for drinking and hygienic purposes and for the extinguishing of fires.

Significantly, none of the amendments would sustain a finding that the damages resulted because a municipally owned water system committed an action in the operation of a business. The damages resulted from the operation of a *governmental* function through the fire department and not the operation of the *business of selling water*. The cases uniformly hold that there is no liability on the part of a defendant city for the alleged negligence of its fire department in the course of the performance of a governmental function in the nature of a health measure.

The liability or nonliability of a municipality for its torts depends upon the capacity in which the city was acting at the time. A municipal corporation has never been held responsible for the negligent acts of its employes who are endeavoring to carry out the regulations of the city to promote the public health.

When faced with the notification on the part of plaintiffs that their spring had gone dry, the city had a choice between two courses of action. It could supply plaintiffs with water by connecting their homes to the water pipelines operated by the city in its proprietary capacity and charge plaintiffs for this service; it could supply the water needed gratuitously by having one of its governmental arms, the fire department, transfer water from a fire plug into the spring. Defendant chose the latter course. In so doing, defendant urges upon this court that it acted in an emergency in the exercise of its police powers, at the public expense, to safeguard the public health as quickly and soundly as it might under the circumstances.

Although the law is confused, as a reference to the cases will readily reveal, as to what is and what is not a governmental function, there is no uncertainty as to the nonliability of a municipality for the torts

of its servants when the service being offered to the complainant is connected with the public health: Honaman v. Philadelphia, 322 Pa. 535; Hill v. Allentown Housing Authority, 373 Pa. 92.

In Scibilia v. Philadelphia, 279 Pa. 549, 558, the Pennsylvania law on this matter is stated as follows:

"The care of public health is undoubtedly a subject matter of general concern, and how it shall be accomplished is a public question. . . . The point under immediate discussion is covered by McQuillin, Municipal Corporations (Supplement), vol. 8, section 2625, p. 8229, thus: 'The liability or nonliability of a municipality for its torts . . . depends upon the capacity in which the city was acting at the time. . . . A municipal corporation is not responsible for the negligent acts of its employees who are endeavoring to carry out the regulations of the city to promote the public health.'"

Our research has revealed no Pennsylvania case which has deviated from this rule. Since the acts of defendant city were acts designed to promote the care of public health, the City of McKeesport cannot be held liable for the negligent torts of its servants engaged in that activity.

In both the Scibilia case and Bandos v. Philadelphia, 304 Pa. 191, the gathering and disposal of refuse was held to be primarily a health measure within the police power of the municipality. In the words of the court in the Scibilia case: "That cleanliness makes for health must be accepted as a truism": page 558. This truism is equally persuasive in the instant case. It does not require extended judicial discussion to establish that a supply of water was necessary, and needed very quickly, for the health and safety of the people in the area where plaintiffs lived. The absence of the normal private water supply created not only a fire hazard, but also a health hazard arising from the lack of proper drinking, toilet and sewerage facilities. Acting in an

emergency, defendant provided water, not as a commercial or proprietary venture, but as a part of its continuing governmental duty to render such service as the need arises.

In connection with the action of the city in supplying water from the fireplug, it must be noted that the city made no charge for this emergency service. As it was stated in the Scibilia case, at page 557:

". . . to prove the duty involved was a corporate, as distinguished from a governmental function, evidence was introduced showing that the particular arm of the public service whose operation caused the injury in controversy was one which derived, and was intended to derive, a business revenue from the performance of the duty in which it was engaged at the time of the accident. Where the authority exercised or thing done is on the border line between the private and governmental capacities in which municipalities may act, and has features suggestive of both, charges made for, and commercial income derived from, the rendition of the services involved have been given decisive influence as elements which determine the case to be of a kind where damages for injuries may be recovered, and the absence of these elements has been allowed force the other way."

In the case at bar, the fact that no charge was made for the service is additional persuasive evidence that the service rendered was not a commercial but a governmental one.

It is now generally recognized to be a proper governmental function of both the Federal government and the State to furnish government aid gratuitously in emergencies to communities suffering from droughts, floods, storms and like disasters. It is universally acknowledged that there is a duty on the State to supply requested first aid, whether it be water, other food, clothing or shelter, in case of such emergencies,

and there is a delegation of such duty to municipalities to perform such sovereign governmental functions in the event of an emergency. The performance of such service cannot be reasonably treated as being in the nature of a purely proprietary act, as a private business transaction in the operation of a water system with a profit motive, and therefore subject to the ordinary law of liability for negligence in the performance thereof. The City of McKeesport, being the governmental agency nearest at hand to render the emergency aid, was, therefore, properly performing a sovereign governmental function in rendering the same.

An apposite statement on this matter is contained in McQuillin on Municipal Corporations (1950, 3rd Edition). There it is stated:

§53.29: " 'The underlying test is whether the act is for the common good of all without the element of special corporate benefit, or, pecuniary profit. If it is, there is no liability, if it is not, there is liability'. . . . 'whether, under a given state of facts a municipality is engaged in a governmental function as distinguished from a proprietary function is a question of law. . . .' If there be uncertainty as to the classification into which a particular activity falls, the doubt should be resolved in favor of its being governmental rather than proprietary."

§53.30: " 'Under the theory of the common law, that the municipality is protected from liability only while exercising the delegated functions of sovereignty, the governmental powers of a city are those pertaining . . . to preserve the public health, to prevent fires, the caring for the poor and the education of the young. . . .' In fact, duties connected with the preservation of the peace or health, or the prevention of the destruction of property by fire are all governmental duties, without question, and hence there is no municipal liability for torts in connection therewith."

It is the opinion of this court that defendant city, in gratuitously supplying plaintiffs with water from its fire plugs, was clearly acting under its police power in attempting to safeguard the public health in an emergency situation. It cannot be held liable in damages for the negligent torts of these servants, if any negligence there be.

The tragedies that occurred from drinking this water without any precautionary measures being taken to assure its purity, are of deep concern to the court. We do not believe that it is to the interests of plaintiffs themselves to proceed with this litigation if there is no legal basis to sustain their position. A clean-cut decision on this matter is necessary. The amendments do not change the fundamental issues involved. For the above stated reasons, an order will be drawn sustaining the preliminary objections and entering judgment for defendant.

Judge Montgomery dissents. His opinion is attached hereto.

### Order

And now, to wit, this March 5, 1957, the above entitled cases having come before the court en banc on preliminary objections ex parte defendant in the nature of a demurrer, after oral argument and consideration of briefs filed, it is ordered, adjudged and decreed that the preliminary objections of defendant be and hereby are sustained. It is directed that judgment be entered in favor of defendant City of McKeesport.

Eo die, exception noted to plaintiffs and bill sealed.
Montgomery, J., dissenting.

### Dissenting Opinion

MONTGOMERY, J.—I would adhere to and not disregard the previous opinion filed in this case on June 27, 1955, by this present court en banc rather than join in the majority opinion now being filed after reargu-

ment to supersede it. In the earlier opinion, reference was made to the case of White Oak Borough Authority Appeal, 372 Pa. 424, wherein it was stated that: "Where a municipality operates a water system it is, ad hoc, a private business corporation." As the complaint and amended complaints are drawn, there is no mention made of any community emergency, fire hazard or other situation requiring the exercise of its police or other governmental power by the City of McKeesport. The substance of the complaint is that a certain group of people in the City of McKeesport had been dependent on a spring as the source of their water supply inasmuch as the city had refused to extend the water lines of its water department so as to accommodate the homes occupied by plaintiffs; however, on several occasions when the spring went dry, the city did furnish a supply by pumping water into the spring and on the present occasion, the supply had been replenished by means of the facilities of the city fire department. It could have done so by tank trucks or other means but it chose to do so in the manner just mentioned. This appears to be the only fact in plaintiff's allegations that contains any implication that the city was performing a governmental function, and I do not deem it sufficient to justify, at this stage of the proceedings, judgments in favor of defendant.

The objections to the pleadings previously sustained and mentioned in the prior opinion have been overcome, in my opinion, by the additional allegations contained in the supplemental amended complaint in which defendant is charged with supplying to plaintiffs contaminated water knowing it was to be used for drinking purposes. This may be difficult of proof but nevertheless, I think plaintiffs should have their opportunity in court to prove it.

I would, therefore, discharge all preliminary objections.