539 A.2d 912

Falls Township, Appellant *v.* Paul J. Scally, Appellee.

Submitted on briefs December 15, 1987, before Judges CRAIG, DOYLE, and Senior Judge NARICK, sitting as a panel of three.

*Richard S. Hoffman,* for appellant.

*David I. Grunfeld,* for appellee.

OPINION BY JUDGE DOYLE, March 30, 1988:

This is an appeal by Falls Township (Township) from an order of the Court of Common Pleas of Bucks County, which granted Paul J. Scally damages for breach of contract.

In February, 1986, Scally filed suit against the Township alleging breach of an employment contract. The Township had terminated its contract with Scally, alleging that its action had been *ultra vires*. After a hearing before the common pleas court, the court held in favor of Scally and awarded him damages in the amount of $13,625 plus interest. Following denial of its motion for post-trial relief, the Township brought this appeal.

On May 29, 1985, Scally was employed by the Township under an oral employment agreement as an environmental protection officer. His duty was primarily to inspect the Township's landfills in order to protect the public from environmental hazards. The initial terms of his employment required that he become a resident of the Township within one year after his appointment. After working for about six months, Scally expressed to the Township manager his desire to have some job security before he committed himself to move to the Township. Thereupon, a written three year employment agreement was prepared by the Township manager and the Township solicitor and was approved by the outgoing Board of Supervisors on December 12, 1985 and signed by both the Township and Scally. The supervisors' terms ended one month later, January 6, 1986.

On or about February 11, 1986, Scally was notified by the Township that his employment was being terminated effective February 25, 1986. The Township believed that Scally was employed in a governmental function, and that it was *ultra vires* for the outgoing Board of Supervisors to enter into a contract that bound the incoming Board. Almost immediately thereafter, Scally secured new employment and brought the instant suit to recover for the losses occasioned by the alleged breach of contract.

The issue which this Court must decide is whether a three-year contract entered into between Scally and a previous Board of Supervisors of the Township, is valid and binding upon the present Board of Supervisors.[1]

---

[1] Apparently, the authority upon which the outgoing Board relied is that found in Section 702 cl. VIII of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §65708, which in pertinent part empowers a township:

To regulate or prohibit the dumping or otherwise depositing of ashes, garbage, rubbish or other refuse

Central to a resolution of this issue is a determination of whether Scally's employment is a proprietary function or a governmental function, and in order to make this determination, it is necessary to define the conceptual difference between these functions.[2] A governmental function is performed for public purposes exclusively, and belongs to the corporate body in its public, political or municipal character. *Moore v. Luzerne County,* 262 Pa. 216, 105 A. 94 (1918). If Scally was performing a governmental function, then, absent a statute to the contrary, the outgoing Board of Supervisors had no authority to tie the hands of its successors. *Scott v. Philadelphia Parking Authority,* 402 Pa. 151, 166 A.2d 278 (1960). Conversely, a proprietary function is for the purpose of private advantage, but the public may derive a common benefit therefrom. And, if Scally's duties were of a proprietary nature, the Board's contract would have to be enforced. *Moore.*

---

materials within the township. To prohibit accumulation of ashes, garbage, rubbish and other refuse materials upon private property, including the imposition and collection of reasonable fees and charges for the collection, removal and disposal thereof. They also have the power to-

(1) Collect, remove and dispose of or to provide, by contract or otherwise, for the collection, removal and disposal, by incineration, land fill or other methods of [sic] ashes, garbage, rubbish and other refuse materials and to prescribe penalties for the enforcement thereof. Any such contract may be made for a period not exceeding three years.

Because of the resolution of this case on other grounds, we need not decide whether the outgoing Board had authority under this statute to employ Scally.

[2] We note that the governmental proprietary distinction has been abrogated in relation to governmental and sovereign immunity cases. *See Faiella v. Bartoles,* 102 Pa. Commonwealth Ct. 258, 517 A.2d 1019 (1986). It has not, however, been abrogated in other areas of municipal law such as the issue presently before us.

Applying this standard to the present case, we hold that Scally was performing a job that was clearly *governmental* in nature. His primary duty was that of an environmental control officer and he was to inspect the operations of the G.R.O.W.S. landfill in the Township. His responsibility was to protect the health and safety of the public from environmental hazards generated by the operation of the landfill. The landfill itself was privately owned and a tax was imposed by the Township on both private and public trash haulers who used the landfill. Scally's activities, while essential to the protection of the public, were *not* an integral part of the operation of the landfill or of the collection of the tax. We, therefore, conclude that his contract was solely one which benefitted the general public of Falls Township. *See Kunz v. Titusville,* 373 Pa. 528, 97 A.2d 42 (1953), which noted that in the context of an immunity question "the gathering and disposal of the refuse and ashes is primarily a health measure and therefore the exercise of a public or governmental function within the police power. . . ." *Id.* at 532, 97 A.2d at 44.

It is unfortunate that in some instances, such as the case before us, a blameless individual must suffer the consequences of such a policy. The alternative, however, could potentially have consequences even more unacceptable. As Justice SIMPSON articulated when speaking of the procedural rules in *Moore:*

> [T]he court cannot blind its eyes to the fact that, in public and private life alike, an official or agent, whose term of service is about to expire, might be tempted to favor his friends and retainers at the expense of his principal. Because thereof, public policy requires that the courts, in furtherance of public and private honesty and fair dealing, shall apply such procedural rules as will prevent or limit summary recovery upon

agreements which possibly may result from yielding to such temptation. *Id.* at 219-20, 105 A. at 95.[3]

Inasmuch as Scally performed a governmental function, the outgoing Board could not bind the incoming Board to continue his employment. Therefore, the order of the trial court must be reversed.

### ORDER

The order of the Court of Common Pleas of Bucks County in the above-captioned matter is reversed.

---

[3] *See also Falls Township v. McManamon,* 113 Pa. Commonwealth Ct. 504, 537 A.2d 946 (1988) (where the same "lame duck" Board of Supervisors dismissed the chief of police and entered into a three-year contract with a new chief of police on November 26, 1985 and the Court held the contract invalid as against public policy).