631 A.2d 1389

COUNTY OF BUTLER, Appellant,

v.

LOCAL 585, SERVICE EMPLOYEES INTERNATIONAL UN-ION, AFL–CIO and Local 2640, American Federation of State, County and Municipal Employees, Buckingham Security, Ltd., and Adcare Corporation, Appellees.

COUNTY OF BUTLER,

v.

BUCKINGHAM SECURITY, LTD., and Adcare Corporation.

COUNTY OF BUTLER,

v.

LOCAL 585, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO and Local 2640, American Federation of State, County and Municipal Employees.

Appeal of BUCKINGHAM SECURITY, LTD., and Adcare Corporation, Appellants.

Commonwealth Court of Pennsylvania.

Argued Oct. 19, 1992.

Decided Sept. 23, 1993.

Reargument Denied Nov. 17, 1993.

Richard DiSalle, for appellant/appellee, County of Butler.

Allen E. Ertel, for appellees/appellants Buckingham Sec. Ltd., and Adcare Corp.

Before SMITH and PELLEGRINI, JJ., and LORD, Senior Judge.

SMITH, Judge.

Before this Court are an appeal by Buckingham Security, Ltd. and AdCare Corporation (collectively, Buckingham) and a cross-appeal by the County of Butler (County) from the November 27, 1991 order of the Court of Common Pleas of Butler County denying Buckingham's motion to dissolve a preliminary injunction entered by the court enjoining arbitration of a contract dispute between the County and Buckingham and also denying the County's motion for partial judgment on the pleadings. The issues raised on appeal are whether this Court has jurisdiction over the County's cross-appeal; whether Buckingham may refer its contract dispute to arbitration; and whether the contract between the former Board of County Commissioners (Board of Commissioners) and Buckingham involves a governmental function and is therefore void and unenforceable as purporting to bind the successor Board of Commissioners.

I.

In 1985, the former Board of Commissioners purchased a building located at 210 South Washington Street, Butler, Pennsylvania, to be used as a minimum security rehabilitation center for County inmates, to be known as "Washington Center," and decided to offer its operation to private entities through a contract bidding process. Buckingham was the successful bidder and in 1987, the County and Buckingham entered into a contract for a term of three years giving Buckingham a lease to the building and exclusive authority to operate the Washington Center.

After a newly elected Board of Commissioners took office on January 4, 1988, the County filed a complaint for declaratory judgment, alleging that the contract is void and unenforceable

because it usurped the exclusive power of the County Board of Prison Inspectors to manage and operate the county's prisons; it is against public policy and constitutes an unconstitutional delegation of a municipal function to private entities; it violates Section 5 of the Private Prison Moratorium and Study Act, Act of March 21, 1986, P.L. 64, 61 P.S. § 1085, in allowing Buckingham to accept non-county inmates; and Buckingham failed to post an adequate performance bond. The County also filed an action in equity seeking to enjoin arbitration of the dispute under the arbitration clause of the contract.

The trial court later granted the County's motion for preliminary injunction enjoining arbitration of the dispute until the issues raised in the action for declaratory judgment were decided. Thereafter, the trial court denied Buckingham's petition to compel arbitration and stay proceedings and the County's motion for partial judgment on the pleadings. In denying the County's motion for reconsideration, however, the trial court granted the County leave to amend the declaratory judgment complaint to set forth allegations relevant to whether the former Board of Commissioners could bind a successor Board of Commissioners in entering into the contract.

After the County amended its complaint, Buckingham again sought to dissolve the preliminary injunction and the County filed a motion for partial judgment on the pleadings asserting that the contract is void and unenforceable because it involves a governmental function of operating a minimum security prison and purports to bind the successor Board of Commissioners. The trial court denied Buckingham's motion, stating that it was another attempt to have the dispute arbitrated prior to determination of the legality of the contract, and denied the County's as well concluding that the County acted in a proprietary capacity when it entered into the contract. Both parties appealed to this Court.[1] The

1. Buckingham filed a motion to quash the County's cross-appeal asserting that this Court lacks jurisdiction over the appeal because the trial court's order denying the motion for partial judgment on the pleadings is interlocutory and the County failed to comply with Pa.R.A.P. 311 allowing interlocutory appeals by permission only. A trial court's order

thrust of Buckingham's contention on appeal is that the preliminary injunction enjoining arbitration must be lifted because the trial court upheld the underlying issue of the legality of the contract. Thus, a pivotal issue decided by the trial court is directly related to the validity of the contract and is therefore a proper subject for review as the trial court's decision turns on whether the ultimate proceedings may go forward.

## II.

This Court's scope of review of a decision to grant, deny or continue an injunction is limited to determining whether there are any apparently reasonable grounds for the trial court's decision. *Independent State Store Union v. Pennsylvania Liquor Control Board*, 495 Pa. 145, 432 A.2d 1375 (1981). In reviewing a trial court's denial of a motion to dissolve an injunction, this Court should not interfere with the trial court's determination absent a showing of an abuse of discretion. *Diehl v. Lockard*, 254 Pa.Superior Ct. 111, 385 A.2d 550 (1978). A party seeking dissolution of a preliminary injunction must show any changes in circumstances that have occurred since the issuance of the injunction. *Taylor Fibre Co. v. Textile Workers Union of America*, 395 Pa. 535, 151 A.2d 79 (1959).

In its motion, Buckingham did not allege any change of circumstances which occurred subsequent to the issuance of the preliminary injunction. Rather, Buckingham alleged that the County failed to timely pursue the action for declaratory judgment. In denying the motion, the trial court merely reiterated that the issue of legality of the contract must first be resolved before allowing arbitration. Although the trial court determined that the contract involved a proprietary

denying a motion for judgment on the pleadings is generally interlocutory and not appealable to this Court. *McKinney v. City of Philadelphia*, 123 Pa.Commonwealth Ct. 144, 552 A.2d 1169 (1989), *aff'd sub nom. Horowitz v. City of Philadelphia*, 524 Pa. 101, 569 A.2d 351 (1990). Therefore, since the trial court's order denying the County's motion is interlocutory and the County failed to seek permission to appeal the order, its cross-appeal must be quashed.

function, the court did not resolve the County's challenge to the contract. Buckingham has consequently failed to meet its burden of showing entitlement to dissolution of the preliminary injunction.

In performing governmental functions, as opposed to proprietary functions, no legislative body can take action which will bind its successors. *Mitchell v. Chester Housing Authority*, 389 Pa. 314, 132 A.2d 873 (1957); *Falls Township v. Scally*, 115 Pa.Commonwealth Ct. 56, 539 A.2d 912 (1988). A contract which purports to bind successor legislative bodies as to the performance of governmental functions is void and unenforceable in its entirety. *Scott v. Philadelphia Parking Authority*, 402 Pa. 151, 166 A.2d 278 (1960). In determining whether a specific action of a local government constitutes a governmental or proprietary function, this Court must consider three factors reiterated in *Associated Pennsylvania Constructors v. City of Pittsburgh*, 134 Pa.Commonwealth Ct. 536, 540, 579 A.2d 461, 463 (1990), *appeal denied*, 527 Pa. 618, 590 A.2d 759 (1991):

In general ... if a given activity is one which a local government unit is not statutorily required to perform, or if it may also be carried on by private enterprise, or if it is used as a means of raising revenue, the function is proprietary.

Buckingham argues that the essence of the contract is a lease of the County building to be used for a free-standing drug and alcohol treatment center and that it agreed to accept the County's referrals of chemically dependent County inmates, while the County characterizes Washington Center as a minimum security prison and that its operation is a governmental function. Review of the contract demonstrates that the Washington Center was intended to be a free-standing drug and alcohol treatment facility, and not a correctional institution as the County contends.[2] The contract further describes specific purposes of the Center as follows:

2. The general purposes of the Washington Center are stated as follows:

Washington Center will be operated by Buckingham Security Ltd., as a minimum security rehabilitation center for the detention of qualified offenders whose problems are associated with alcohol and drug abuse. It will be a minimum security rehabilitation center with goals and standards of behavior set for qualified and selected male inmates which will improve their chances for a productive life. Operators Bid Proposal, p. 5.

Under terms of the contract, Buckingham will operate the Washington Center as a rehabilitation facility to provide treatment and counselling to drug and alcohol dependent individuals and is responsible for providing necessary personnel including administrative and medical staff. Buckingham is required to obtain authorization and/or licenses from state agencies necessary for the operation of a free-standing drug and alcohol facility within thirty days of the execution of the contract. The joint bidder, AdCare Corporation, is licensed to operate a free-standing clinic for drug and alcohol treatment programs and will function as a managing partner for the Center.

At the present time, the Washington Center can accommodate up to thirty referrals, and to fill the unused facility, Buckingham is authorized to accept non-county inmates in-

> The alcoholic that commits a crime has always been treated as a criminal, but almost never as an alcoholic. The purpose of the Washington Center's program is to bring to the sentenced alcoholic many of the accepted treatment approaches, that here-to-fore [sic] were available almost exclusively to the alcoholic who has not committed a crime.
>
> While the Washington Center's primary purpose is directed to the alcoholic, it will deal with all the forms of chemical dependence. The program provides non-hospital residential care, with emphasis on individual counseling, group therapy in rational behavior; a short-term therapy designed to give long-term results through the use of self help technique. Social and vocational planning, identification of individual strengths and weaknesses and the development of skills to manage them will also be pursued. The program will place emphasis on post release planning and the identification of community resources that will assist in the transition from confinement to a return to the community.
>
> The program is designed to meet the state's standards for a free-standing facility.
> Operators Bid Proposal, p. 7.

cluding federal and out-of-state inmates. Buckingham must pay rent to the County and a portion of the income generated from providing services to non-county inmates. The County acknowledges that it is under no statutory obligation to operate a drug and alcohol treatment facility for its inmates, and under the factors indicated in *Associated Pennsylvania Constructors,* the trial court thus correctly determined that the County acted in its proprietary capacity in entering into the contract.

Since Buckingham failed to show any change in circumstances and because the County acted in its proprietary capacity in entering into the contract, the trial court properly denied Buckingham's request for dissolution of the preliminary injunction. Accordingly, the order of the trial court is affirmed, and this matter is remanded to the court for further proceedings to dispose of remaining claims raised by the County as to the legality of the contract including, inter alia, Buckingham's failure to post an adequate performance bond.

## ORDER

AND NOW, this 23rd day of September, 1993, the order of the Court of Common Pleas of Butler County dated November 27, 1991 is hereby affirmed. The motion of Buckingham Security, Ltd. and AdCare Corporation to quash the cross-appeal of the County of Butler is granted and the County's cross-appeal is quashed. This matter is remanded to the court for further proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

PELLEGRINI, Judge, concurring.

I join with the majority in quashing the County's appeal because the order denying its request for a partial motion for summary judgment is interlocutory, and, as such, is unappealable. I also concur with the majority that the trial court did not err in not dissolving the preliminary injunction enjoining arbitration because there has not been the needed change in

circumstances since its issuance that would justify dissolution. I, however, disagree with the majority statement *in dicta* that the facility to be operated by Buckingham was a drug treatment center, a proprietary function, rather than a prison, a governmental one.

First, I do not believe that we should reach this issue because it is unnecessary to do so to resolve the appeal. Once we found that the requisite change in circumstances had not occurred, that alone justifies the trial court's decision not to dissolve the injunction. Moreover, whether it was a proprietary or governmental function was the issue the County raised in its appeal. Once quashed, it is not even an issue before us. Second, based on the state of the record, Buckingham's proposed facility appears to be a prison because the inmates have been convicted of a crime, the time in Buckingham's proposed facility will be counted against their court-imposed sentence, and the core distinction, they are not allowed to leave. Just because they are undergoing drug rehabilitation does not make Buckingham's facility a drug treatment facility anymore than prison inmates receiving medical care makes a prison a hospital.