M. David PRESTON, Appellant,

v.

SAUCON VALLEY SCHOOL DISTRICT.

Commonwealth Court of Pennsylvania.

Argued April 3, 1995.
Decided Oct. 13, 1995.
Reargument Denied Nov. 29, 1995.

Elwood M. Malos, for appellant.

Michael I. Levin, for appellee.

Before COLINS, President Judge, and DOYLE, J., and NARICK, Senior Judge.

DOYLE,[1] Judge.

David Preston appeals an order of the Court of Common Pleas of Northampton County, which granted the Saucon Valley School District's (District) motion for summary judgment.

Preston was employed as Superintendent of Schools by the District from July 1987 until June of 1993, when he retired. Pursuant to an employment contract executed between Preston and the District on November 30, 1989, the District was to pay Preston a designated annual salary of $63,720 for the 1989–90 school year, which would "be adjust-

---

1. This case was reassigned to the writer on June 6, 1995.

ed on an annual basis" thereafter.[2] The employment contract further provided that "[t]he superintendent shall be entitled to all rights and benefits incorporated in the 'Administrator Compensation Plan' currently in effect." (1989 Contract, paragraph 6; Reproduced Record (R.R.) at 67a.)

On October 14, 1991, the Saucon Valley School Board (Board I) adopted an Administrator's Compensation Plan (ACP), known as the Saucon Valley School District Professional Contract, that established the salaries and benefits for administrators employed by the District, including Preston as superintendent. Specifically, the ACP established a salary for Preston of $72,580 for 1991 as well as his fringe benefits. On October 29, 1991, fifteen days after the ACP was adopted by the Board two members of Board I and Preston entered into an agreement, referred to as the "Addendum", which amended Preston's original 1989 employment contract. The Addendum provided for an increase in Preston's salary to $78,386 beginning January 1, 1992,[3] and gave Preston the same rights and benefits as provided in the ACP.[4]

Shortly thereafter, Board I was voted out of office and six new School Board members were elected (Board II); the new members took office on December 3, 1991. The next day, December 4, 1991, Board II adopted resolutions rescinding both the ACP and the Addendum, thereby revoking Preston's increases in salary and benefits.

Preston filed suit against the District in the common pleas court seeking $79,643 in salary and benefits that he was allegedly owed under the Addendum and the ACP. The District moved for summary judgment, and on June 6, 1994, the trial court granted that motion. The trial court recognized that only two members of Board I executed the Addendum. Therefore, the trial court reasoned, that, because Preston conceded that the full membership of Board I never publicly voted on the Addendum and because Preston failed to introduce evidence showing that Board I approved it in any other manner, the Addendum was invalid.

However, after the trial court's order was issued, Preston filed a motion for reconsideration. The trial court granted reconsideration on June 24, 1994 and vacated its prior order. Preston then introduced additional evidence in the form of affidavits of the members of Board I, which asserted that eight of the nine members of Board I approved the Addendum "in conference."[5] On July 7, 1994, the trial court again issued an order granting the District's motion for summary judgment. The trial court recognized that a majority of Board I approved the Addendum and the ACP, but reasoned that the salary and benefits provided to Preston under those agreements violated Sections 1075 and 1164 of the Public School Code of 1949 (Code).[6] In the trial court's view, Section 1075 of the Code[7] allows a board of school directors to fix a superintendent's salary only at the "convention" at which the superintendent is elected and that a public meeting is required. With regard to Section 1164 of the Code, the trial court concluded

---

**2.** The full term of the contract was from November 13, 1989 to June 30, 1993.

**3.** The Addendum attempted to set Preston's salary retroactively for the years 1990 and 1991 as well.

**4.** The preamble of the Addendum recognized that "a separate contract is required to be executed by the Board and Superintendent pursuant to the Public School Code (24 P.S. Sec. 10–1073)." (Addendum at p. 2; R.R. at 72a.) It further recited that "the Board unanimously approved the salary for the Superintendent at its October 28, 1991 meeting," (Addendum at p. 1; R.R. at 71a) but apparently, no such meeting ever took place.

**5.** The affidavits of the eight board members on Board I, identical in every respect, recite that the

terms of the Addendum "were specifically discussed and agreed upon in conference by eight (8) members of the Board...." (Exhibits E–M of Appellant's Brief.) However, there was no explanation of where or how this conference took place, whether at a meeting, by a telephone conference call, or otherwise.

**6.** Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 10–1075 and § 11–1164.

**7.** Section 1075 of the Code provides in relevant part:

The board of school directors at any convention electing a district superintendent ... shall determine the amount of salary to be paid such district superintendent....

that superintendents are excluded by that statute from the class of employees that may be covered by an administrator compensation plan.[8] This appeal followed.

Preston raises the following issues for our review: (1) that his original employment contract permits periodic increases in his salary and benefits; (2) whether the ACP, dated October 14, 1991, is such a periodic increase and is enforceable, and provides him with the benefits enumerated therein; (3) whether the Addendum is an enforceable agreement even though it was not approved at a public meeting as required by Section 508 of the Code, 24 P.S. § 5–508; and (4) whether the Addendum changed his employment contract and provided him with increases in salary and benefits.

We will begin by considering Preston's contentions that the ACP and the Addendum, executed between Preston and Board I, are enforceable agreements.

■ Preston first argues that the Addendum is enforceable even though it was not adopted by Board I in accordance with the requirements of Section 508 of the Code, 24 P.S. § 5–508.

Section 508 of the Code provides in pertinent part:

> The affirmative vote of a majority of all the members of the board of school directors in every school district, *duly recorded, showing how each member voted, shall be required in order to take action on the following subjects:*—(Emphasis added.)
>
> . . . .
>
> Entering into contracts of any kind, including contracts for the purchase of fuel or any supplies, where the amount involved exceeds one hundred dollars ($100).
>
> Fixing salaries or compensation of officers, teachers, or other appointees of the board of school directors.
>
> . . . .

Failure to comply with the provisions of this section shall render such acts of the school directors void and unenforceable.

Preston does not dispute that Board I did not comply with the requirements of Section 508. The record adequately established that the Addendum was signed by only two members of Board I, and that the Addendum was never placed before Board I at a public meeting, nor approved by a majority vote at a public meeting. Preston countered, however, by introducing into evidence affidavits of eight members of Board I, which confirmed that all eight members approved the Addendum "in conference." It was never established, however, that any type of a formal meeting ever took place; Preston states in his brief only that the board members agreed upon the salary "in executive session."[9] He asserts that, while the aforementioned procedure does not comply with the technical mandates of Section 508, Board I's approval of the Addendum is nevertheless valid under *Mullen v. DuBois Area School District,* 436 Pa. 211, 259 A.2d 877 (1969). We disagree.

In *Mullen,* a teacher was abruptly dismissed by a school board after he had been employed by the school district as a temporary professional employee for over a year. The board based Mullen's dismissal on a charge of "unsatisfactory service." Mullen, however, had four consecutive satisfactory ratings and only his last review, which came only after he became the "building representative" for the local teachers' union, was rated unsatisfactory. Thereafter, Mullen brought a mandamus action against the school board to force his reinstatement as a temporary professional employee and for economic damages. The common pleas court granted Mullen mandamus relief and the Supreme Court affirmed. One of the issues decided by the Supreme Court in *Mullen* was whether a valid employment contract existed, because the school directors failed to record their vote on the original contract in the minutes of the meeting. The court excused the school board's technical error in

---

8. Section 1164 of the Code limits the employees eligible for an administrator compensation plan under the following definition:

"**School administrator**" shall mean any employe of the school entity *below* the rank of district superintendent. . . . (Emphasis added.)

9. *See supra* note 5.

failing to record its votes in the minutes, and held that a valid contract existed. The court believed that it would be unconscionable to hold that a valid employment contract did not exist under the circumstances presented in that case.

The present case is distinguishable from *Mullen* because here the issue involves Board I's failure to **vote** on the Addendum at a public meeting, not a mere technical error in **recording** Board I's votes. Board I's failure to publicly vote on the Addendum is too serious of an omission to excuse under the holding in *Mullen*. Section 508 of the Code plainly presupposes that a vote of the members of a school board be made at a public meeting, since the statute refers to the recording of the minutes of such meetings. *See Morning Call, Inc. v. Board of School Directors*, 164 Pa.Cmwlth. 263, 642 A.2d 619 (1994), *petition for allowance of appeal denied*, 539 Pa. 698, 653 A.2d 1235 (1994). We, therefore, hold that Board I violated Section 508 of the Code when it approved the Addendum in a private "executive session" and, accordingly, it is unenforceable.

■ Furthermore, Board I's failure to vote on the Addendum at a public meeting also violated Section 4 of the Sunshine Act (Act), Act of July 3, 1986, P.L. 388, *as amended*, 65 P.S. § 274, which states that "[o]fficial action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public...." Under Section 3 of the Act, 65 P.S. § 272, the term "official action" includes, *inter alia*, decisions concerning an agency's business made by an agency, and specifically includes decisions of a school board that commit the board to a particular course of conduct, such as hiring a superintendent. *Morning Call.* While Section 8 of the Sunshine Act, 65 P.S. § 278, permits an agency to discuss employment matters in a private executive session, the final vote on those matters must be taken at a public meeting. Section 8(c) of the Sunshine Act, 65 P.S. § 278(c); *Morning Call.*

In the instant case, the Addendum would have committed Board I to increasing Preston's salary and benefits and, therefore, the vote on the Addendum constituted official action of Board I that was required to be taken at an open meeting. *Morning Call.* While eight members of Board I voted "in conference," Board I never ratified that decision by voting on the Addendum at a public meeting as mandated by Section 8(c) of the Sunshine Act. Hence, we hold that the Board's failure to vote on the Addendum at a public meeting violated the Sunshine Act, and is an additional reason why Board I's actions must be set aside.

■ In addition to the invalidity of the Addendum and the ACP with regard to Preston, even if they were valid, Board I's approval of them would be unenforceable against Board II.

In *Scott v. Philadelphia Parking Authority*, 402 Pa. 151, 166 A.2d 278 (1960), the Supreme Court determined that an employment contract entered into between an employee and the prior members of the Philadelphia Parking Authority was unenforceable against the new members of that Authority, and that it was beyond the power of the prior members to execute a contract that extended beyond their term of office. The Supreme Court wrote:

> In the performance of sovereign or governmental, as distinguished from business or proprietary functions, no legislative body, or municipal board having legislative authority can take action that will bind its successors.... It cannot enter into a contract which will extend beyond the term for which the members of body were elected.

*Id.* at 158, 166 A.2d at 282–83 (citations omitted).

In *Falls Township v. Scally*, 115 Pa. Cmwlth. 56, 539 A.2d 912 (1988), this Court held that a three year employment contract, executed between Scally and a former township Board of Supervisors, did not bind a subsequent Board of Supervisors. Following *Scott*, we reasoned that Scally's employment involved a government function and, absent a statute to the contrary, public policy prohibited the prior Board from binding the hands of its successor Board. The rational underlying this public policy is that officials can be tempted to favor their friends and retainers

at the expense of the public good. *Moore v. Luzerne County,* 262 Pa. 216, 105 A. 94 (1918).

The record in this case now before us shows that both the ACP and the Addendum were enacted shortly before the members of Board I relinquished their seats and Board II assumed power. The ACP, adopted on October 15, 1991, was intended to fix Preston's salary for the calendar year of 1991; [10] the Addendum, adopted just 14 days later, was intended to fix Preston's salary at a still higher level, beginning in January of 1992. Applying the reasoning of *Scott* and *Falls Township,* Board I did not have the authority to enter into the Addendum and the provisions of the ACP regarding Preston, since those contracts were intended to extend beyond the term of Board I and bind Board II. Hence, we hold that both the ACP with regard to Preston's employment and the Addendum are unenforceable against Board II.

We recognize that Section 1073 of the Code, 24 P.S. § 10–1073, gives a school board the power to elect, at a public meeting, a superintendent to serve for a term of from three to five years, and that Preston's 1989 employment contract was certainly binding on Board II. However, the issue here is not whether Board II was bound by the 1989 contract in general, since its term did not end until June 30, 1993, but rather whether Board II was bound by the salary increases for Preston in the ACP and the Addendum.

Board I, via the Addendum and the ACP, attempted to give Preston the equivalent of a *new* contract that increased his salary and benefits, *contrary* to the terms of the 1989 agreement. While the 1989 contract permitted Preston's salary to be adjusted on an **annual** basis, Board I violated that contract by giving Preston two salary increases within a 15 day period. Section 1073 of the Code simply does not condone Board I's decision to rewrite Preston's employment contract in the middle of its term, substantially increasing his salary and benefits, even by a vote at a

public meeting. Furthermore, Section 1164 of the Code, 24 P.S. 11–1164, allows a school board to adopt an administrator's compensation plan fixing the salaries of its "school administrators," a term which includes only school employees *below* the rank of superintendent, assistant superintendent and executive director. Hence, under Section 1164 of the Code, since Preston was a superintendent, Board I could not use the ACP to increase his salary. Therefore, because the Code did not authorize Board I to enter into the Addendum, and because Preston's salary could not be increased under the ACP, the exception to *Scott* does not apply and those contracts are not binding on Board II.

Accordingly, the trial court's order granting summary judgment in favor of the District is affirmed.[11]

## ORDER

NOW, October 13, 1995, the order of the Court of Common Pleas of Northampton County in the above-captioned matter is hereby affirmed.

NARICK, Senior Judge, dissenting.

I respectfully dissent to the majority's conclusion that the Code did not authorize Board I to enter into the Addendum, and that the Addendum and the ACP are not binding on Board II. It is my belief that although Board I, which was a lame duck school board, acted in ways which were clearly contrary to the wishes of the incoming school board, Board II has not shown that Board I's actions were invalid, nor has it met its burden to show there are no existing issues of material fact sufficient to sustain the trial court's grant of the Board's motion for summary judgment.

The majority first argues that because Board I did not comply with the requirements of Section 508 of the Code, 24 P.S. § 5–508, the Addendum was not valid. That section requires an affirmative vote of a ma-

10. We assume that this would have been a retroactive increase to January 1, 1991; the Addendum likewise stated that the higher 1991 salary began January of 1991.

11. Because we have determined that both the ACP and the Addendum were invalid, we need not consider Preston's argument involving the interpretation of his original employment contract.

jority of the board members, duly recorded, showing how each member voted. The majority states that because it was conceded that no formal vote was taken or recorded, the Addendum approved by the majority of Board I is invalid. The majority further distinguishes *Mullen v. DuBois Area School District,* 436 Pa. 211, 259 A.2d 877 (1969), in which it was held that Section 508 of the Code is directory only, and that a formal vote recorded in the minutes is not mandatory, provided "that the proof from which Board approval is inferred must be solid." *Mullen,* 436 Pa. at 216, 259 A.2d at 880.

The majority writes, "the present case is distinguishable from *Mullen* because here the issue involves Board I's failure to vote on the Addendum at a public meeting, not a mere technical error in recording Board I's votes. Board I's failure to publicly vote on the Addendum is too serious of an omission to excuse under the holding in *Mullen.*" (Majority Op. at 1122.) However, it is precisely the failure to formally vote that is excused in the *Mullen* holding. There is no evidence in the *Mullen* opinion that any vote was taken; rather, the Supreme Court upheld the validity of the employment contract, despite the fact that only two of the board members signed the contract, on the basis that "it was quite clear that the Board did approve the appointment and accepted it." *Id.* at 215, 259 A.2d at 879.

The *Mullen* Court explained its rationale for excusing the board's failure to hold a formal meeting and vote, provided there was solid proof of board approval, by noting the purpose of Section 508 of the Code.

> This statute is a valuable one, intended to compel the expression of each individual member of the school board on a subject all-important in the public education, *and this for the very purpose of preventing jobbery, and the exercise of one man power,* in the conduct of our common schools. . . .

*Id.* at 216, 259 A.2d at 880. (Emphasis added.)

Here, the proof that there was majority approval of the Addendum, and that it was not simply the exercise of "one man power" is very solid, much more solid than the proof discussed in the *Mullen* opinion. Preston introduced into evidence affidavits of eight members of Board I, which confirmed that all eight approved the Addendum in conference. Therefore, because of this solid proof, the Addendum was valid under Section 508 of the Code, and the majority's attempt to distinguish *Mullen* is not persuasive.

The trial court accepted the sufficiency of the proof of the majority's approval of the Addendum, but it stated that even if the majority of the Board then in office did approve the Addendum, as asserted in the affidavits, it would decline to enforce it, because a public meeting is required by 24 P.S. § 10–1075. However, 24 P.S. § 10–1075, on its face, applies when a new district superintendent is "elected" at a "convention." The "election" of a new superintendent, is by majority vote of the school board directors, 24 P.S. § 10–1071,[1] at a "convention" which must occur in the last year of the term of the district superintendent, 24 P.S. § 10–1073.[2] Here, there was clearly no "election" of a new superintendent, and Preston's term was not due to expire until June, 1993. Therefore, the Board was not required to convene a public meeting in order to approve the 1991 Addendum.

Moreover, there are clearly issues of material fact concerning whether there was a violation of the Sunshine Act. The affidavit of the Board's solicitor stated that the Addendum was an effort to reinstate Preston's benefits because, as Superintendent, he was not technically within the group of mandated beneficiaries under the ACP, which had been previously adopted at a public meeting of the Board. The Board argues that there were procedural irregularities in regards to the adoption of the ACP, because it was not preceded by a "meet and discuss" session, but, again, this is a disputed question of fact, and the Board as the moving party has the burden of proving the nonexistence of any genuine issue of fact. *Thompson Coal Co. v.*

---

1. Section 1071 of the Public School Code of 1949.

2. Section 1073 of the Public School Code of 1949.

*Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466 (1979). Because it failed to meet this burden, summary judgment was improper.

The majority holds that Board I did not have the power to bind Board II by the Addendum or the provisions of the 1991 ACP because, despite its recognition that Section 1073 of the Code, 24 P.S. § 20–2073, gives a school board the power to appoint a superintendent to serve a term of from three to five years, and that Preston's 1989 contract was certainly binding on Board II, the Addendum and ACP, attempted to give Preston a new contract contrary to the terms of the 1989 agreement. The majority's evidence that this was a new contract is that while the 1989 contract permitted Preston's salary to be adjusted on an annual basis, Board I violated that contract by giving Preston two increases within a 15 day period.

However, the majority's own factual discussion belies this statement. The majority states that on October 14, 1991, the Saucon Valley School Board adopted an ACP which established a salary for Preston of $72,580.00 for *1991,* as well as his fringe benefits, and then fifteen days after the ACP was adopted, Board I and Preston entered into an agreement, the Addendum, which provided for an increase in salary to $78,386.00 to take effect on *January 1, 1992.* (Majority Op. at 1121.) These increases were annual adjustments for consecutive years, and not two increases within a 15 day period. Moreover, the majority states that the Addendum attempted to set Preston's salary retroactively for the years 1990 and 1991 as well. (Majority Op. at 1121, n. 3.) Although in my reading of the Addendum this appears to be merely a restatement of the annual salary received by Preston in those years, there remains a genuine issue of material fact whether Preston had been receiving the amounts stated in 1990 and 1991, or whether the Addendum attempted to set Preston's salary retroactively to 1990.

Moreover, whether it was the intention of the parties to the 1989 contract to extend the benefits of each, successive ACP to Preston, thus incorporating their terms by reference, also implicates questions of fact, which would preclude the grant of summary judgment.

Preston argues that by the terms of his 1989 contract, he was entitled to all the rights and benefits of the 1991 ACP because his 1989 contract states that the Superintendent shall be entitled to all rights and benefits incorporated in the ACP "currently in effect." He claims that if the parties had intended the term "currently in effect," to refer to the ACP that was in effect in 1989, it would have so specified. Failing such language, Preston claims that the most reasonable interpretation is that he is entitled to the rights and benefits of each ACP as adopted and then "currently in effect." At the minimum, Preston argues that this language is ambiguous, and consequently parole evidence regarding the parties' intentions should have been admitted. Moreover, Preston claims that he was entitled to present evidence of the history of the relationship between the parties, i.e. the course-of-performance of the contract, in order to show that he had received the benefits of each, successive ACP.

The Board, in contrast, argues that the language of paragraph 6 is clear and unequivocal, and if it were the intent of the parties to extend the rights and benefits of future ACP's to Preston, and not just the current ACP that was in effect at the time of the 1989 contract, it could have included a provision which stated that Preston was entitled to the rights and benefits of any and all subsequent ACPs. Thus, according to the Board, there is no ambiguity in the 1989 contract, and Preston is not entitled to offer evidence extrinsic to the contract language.

The intention of the parties is the paramount consideration in contract interpretation. This intention may be ascertained from the document itself when the terms are clear and unambiguous. *Hutchison v. Sunbeam Coal Corp.,* 513 Pa. 192, 519 A.2d 385 (1986). A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Commonwealth State Highway and Bridge Authority v. E.J. Albrecht Co.,* 59 Pa.Cmwlth. 246, 430 A.2d 328 (1981). "Where an ambiguity exists, parole evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the

instrument or by extrinsic or collateral circumstances." *In re Estate of Herr,* 400 Pa. 90, 94, 161 A.2d 32, 34 (1960). Thus, if a contract is not patently ambiguous, an ambiguity may be revealed by extrinsic evidence, if that extrinsic evidence is not barred by the parole evidence rule, and once this ambiguity is revealed, parole evidence regarding the intent of the parties is admissible. *Langer v. Monarch Life Insurance Co.,* 879 F.2d 75 (3rd Cir.1989) (construing Pennsylvania contract law).

Moreover, course-of-performance evidence is not barred by the parole evidence rule because under our case law, post-agreement conduct is always relevant in interpreting a writing. *Pennsylvania Engineering Corp. v. McGraw–Edison Co.,* 500 Pa. 605, 459 A.2d 329 (1983). As a result, if course-of-performance evidence reveals an ambiguity in a contract, then parole evidence is admissible to establish the intention of the parties to the contract.

The determination of whether a contract provision is ambiguous is a question of law resolved by the court, while resolution of conflicting parole evidence, as to what was intended by the parties relevant to the ambiguous provision, is for the trier of fact. *Hutchison.* Here, each of the parties' interpretations of this language is reasonable and logical, thus showing that it is susceptible of different constructions and capable of being understood in more than one sense. Moreover, both parties are able to propose alternative and more specific language which would render the term "currently in effect" unambiguously consistent with their respective understandings of the meaning of this term. Therefore, parole evidence regarding the intent of the parties relevant to this provision should have been admitted into evidence, and summary judgment was improper because the meaning of the term should have been resolved by a trier of fact.

Furthermore, even if the 1989 contract were not ambiguous, the trial court erred in failing to admit evidence offered by Preston showing that he had benefitted from successive ACP's. This evidence of the course-of-performance of the contract is admissible, whether or not there is any patent ambiguity

in the language of the 1989 contract. At the same time, if Preston's allegations regarding the parties' post-agreement conduct are proved to be correct, a latent ambiguity in the meaning of this contract provision becomes apparent, and parole evidence must be admitted for the purpose of proving whether it was the intention of the parties to the 1989 contract to extend benefits to Appellant from each, successive ACP "currently in effect."

Summary judgment is granted only in the clearest of cases, where the right is clear and free from doubt. The moving party has the burden of proving the nonexistence of any genuine issue of fact. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the record must be viewed in the light most favorable to the non-moving party. Pa. R.C.P. No. 1035. *Thompson Coal Company.* Thus, because both parole evidence regarding the parties' intentions, and evidence of the parties' performance of the contract was not admitted, summary judgment was improper.

While it is true that the Code only allows a school board to adopt an administrators compensation plan fixing the salaries of its "school administrators" below the rank of superintendent, if the trier of fact were to conclude, after hearing all the parole evidence and all evidence regarding post–1989 performance of the contract that the parties intended to extend the benefits of each, successive ACP to Preston, then it may be found that it was the intention of the parties to incorporate the salary and benefits of the 1991 ACP by reference. Such an attempt to incorporate by reference was upheld in *Marcinak v. Southeastern Greene School District,* 375 Pa.Superior Ct. 486, 544 A.2d 1025 (1988), where it was determined that a professional employee's collective bargaining agreement could be incorporated by reference in the superintendent's contract of employment, despite the fact that the superintendent was not included, and could not be included in the teachers' collective bargaining agreement.

In the present controversy, I believe that Preston has introduced sufficient evidence that questions of fact exist regarding the

course of performance and the intentions of the parties to the 1989 contract, as to whether the parties intended to make each successive ACP applicable to Preston. Moreover, there exist questions of fact regarding Preston's employment and salary history whose resolution would determine whether Board I violated the terms of the 1989 contract by approving the Addendum and the ACP and writing a new contract which is not binding on Board II, or whether these documents were in line with the terms of the 1989 contract, which the majority concedes binds the successor Board. Moreover, I would find under the Supreme Court's holding in *Mullen* that the Addendum was valid under Section 508 of the Code. Therefore, I would reverse the grant of summary judgment and remand for trial.