STATE STREET BANK & TRUST CO., Petitioner,

v.

COMMONWEALTH of Pennsylvania, TREASURY DEPARTMENT and Barbara Hafer, in her capacity as Treasurer of the Commonwealth of Pennsylvania, Respondents.

Commonwealth Court of Pennsylvania.

Argued April 16, 1998.

Decided May 26, 1998.

Robert L. Byer, Pittsburgh, for petitioner.

Paul M. Yatron, Reading, for respondents.

Before COLINS, President Judge, LEADBETTER, J., and LORD, Senior Judge.

COLINS, President Judge.

Before the Court are preliminary objections filed by the Treasury Department and

Barbara Hafer as Treasurer for the Commonwealth (Treasurer Hafer) to State Street Bank's (Bank) action seeking a declaration that Treasurer Hafer cannot unilaterally terminate custody and securities lending agreements between the Treasury Department and the Bank. Also before us are cross-motions for summary relief.

On November 7, 1994 the Treasury Department entered into two agreements with the Bank. The first was a two-year global custody and safekeeping services agreement (custody agreement) under which the Bank acted as custodian of specified assets for an annual fee of $250,000; the custody agreement could be terminated by either party upon 120 days written notice. The second was a two-year securities lending program contract (securities lending agreement) under which the Bank acted as exclusive agent for securities lending services for the assets held by the Bank under the custody agreement in exchange for compensation at 15 percent of the monthly gross income realized from securities lending activities. The securities lending agreement provided for termination by the Treasury Department at any time.

In 1996, at the end of then-Treasurer Knoll's term of office, the Treasury Department proposed amendments to the agreements. The parties agreed to extend the agreements for one year, effective January 1, 1997, and that the agreements would thereafter be extended for additional two-year periods if securities lending gross revenue exceeded stated goals.[1] The parties also agreed that neither party could unilaterally terminate either agreement. In accordance with the Section 204(f) of the Commonwealth Attorneys Act,[2] the Office of Attorney General approved the proposed amendments after further amending the contract termination language.[3]

---

1. The agreements would be extended for two years effective January 1, 1998 if securities lending gross revenue exceeded $40 million for the period from January 1995 through December 1997, and for two additional years effective January 1, 2000 if such revenue exceeded $24 million from January 1998 through December 1999.

2. Act of October 15, 1980, P.L. 950, as amended, 71 P.S. § 732–204(f).

3. The Office of Attorney General supplied revised termination language as follows: "This agreement may be amended solely by the mutual written agreement of the parties hereto. In consideration of the mutual covenants herein, and in express reliance thereon, the parties agree that

■ The $40 million revenue threshold was reached in April 1997 and as of that time the agreements were extended until December 31, 1999. However, Treasurer Hafer notified the Bank that the amendments could not lawfully extend the terms of the agreements beyond the term of office of her predecessor and that she intended to unilaterally terminate the agreements after identifying a successor custodian/lending agent. Soon thereafter, Treasurer Hafer issued a request for proposals for the services of a custodian/lending agent. In its petition to this Court, the Bank seeks a declaration to the effect that the Attorney General's approval of the agreements precludes Treasury from terminating the agreements or from asserting their illegality. Treasury filed preliminary objections,[4] and the parties then filed cross-motions for summary relief under Pa. R.A.P. 1532(b).[5]

■ Contracts between governments and private parties are subject to legal constraints that do not apply to private agreements in that governments are subject to constitutional and statutory limitations, the contracting official must have contracting authority, and the contract must not bargain away essential government powers or unduly bind successive governments by preventing their exercise of essential powers.[6] Historically, judicial review of public contracts has established that states may not enter into irrevocable contracts that surrender sovereign right and powers and that certain essential state powers may not be contracted away.[7]

The inalienable power doctrines are expressed as absolute prohibitions, but neither doctrine has ever been so interpreted. Courts have adopted several tests that refine and limit the potentially broad reach of the doctrines. The most widely adopted test distinguishes between ... governmental and proprietary activities....

A similar test based on the contract's general subject matter or the parties' contractual functions also has evolved. The judiciary has found that certain governmental activities are essential for governance or reserved for sovereign exercise alone....

In addition : ... some courts have employed other policy prescriptions to determine whether ... government contracts should be enforced. These tests emphasize such factors as the fairness and reasonableness of the contract, the extent to which it is advantageous to the [government], and whether it deprives the [government] of discretion that should remain unimpaired.[8]

### The Governmental/Proprietary Test

■ Courts applying the governmental/proprietary test generally characterize as governmental "powers that are the sole pre-

---

neither party may unilaterally terminate or amend this agreement." (Petition for Review, paragraph 11.)

4. Treasury filed the following objections: 1) in the nature of demurrer, asserting that the contracted service as custodian of assets and securities lending are governmental functions and as such the agreements executed by one state treasurer cannot bind the successor unless specifically adopted by that successor; and 2) that the Bank had an adequate remedy at law in that Treasurer Hafer's August 1997 letter notifying the Bank of the termination decision constituted an appealable adjudication of a Commonwealth agency and that the Bank failed to appeal within the 30-day appeal period.

5. Pa. R.A.P. 1532(b) provides, in pertinent part, "At any time after the filing of a petition for review in an appellate or original matter the court may on application enter judgment if the right of the applicant thereto is clear." Sum-

mary relief is warranted where material issues of fact are not in dispute and it is clear that the applicant is entitled to judgment as a matter of law. *Jannetta v. Knoll*, 129 Pa.Cmwlth. 458, 566 A.2d 330 (1989), *affirmed*, 527 Pa. 358, 591 A.2d 1052 (1991).

6. *See* Janice C. Griffith, *Local Government Contracts: Escaping from the Governmental/Proprietary Maze*, 75 Iowa L.Rev. 277, 281–282 (1990). This article examines the genesis of judicial doctrines and principles used to invalidate public contracts and the various tests used in making those determinations. The article traces these doctrines from early attempts to enforce the contracts clause of the U.S. Constitution against states and local governments that abrogated the terms of contracts with private parties.

7. *See Id.* at 283.

8. *Id.* at 284–85 (footnotes omitted).

rogative of the sovereign, or that are deemed indispensable to the proper functioning of government[,]" such as decision-making or discretionary matters that "each body of officeholders should be able to control, free of any restrictions imposed by its predecessors."[9] These powers include functions that the state must perform and those that it can perform more economically, more efficiently, or more fairly than the private sector.[10] Proprietary activities are generally considered to be those that have traditionally or principally been supplied or performed by private enterprise; however, even some of these activities have been deemed governmental when incident to public operations.[11] Applying the governmental/proprietary test to the instant matter, we must examine the nature of the functions delegated to the Bank under the two agreements.

The executive branch of the Commonwealth includes the office of the State Treasurer,[12] the powers and duties of which are largely statutory. Section 206 of the Administrative Code of 1929 [13] provides that the Treasury Department shall have as its head the State Treasurer, "who shall, either personally, by deputy, or by the duly authorized agent or employe ... exercise the powers and perform the duties by law vested in and imposed upon the department." The State Treasurer exercises the statutory powers and performs the statutory duties as custodian of various Commonwealth assets, which are paid into the State Treasury.[14]

The Fiscal Code authorizes the investment of funds, and it imposes a duty of judgment and care, a duty of prudence, discretion, and intelligence, with regard to the funds' permanent disposition; the discharge of these duties requires that the Treasurer give due consideration to the investment's probable earnings and to the safety of the capital.[15] The exercise of judgment and care specifically includes "the daily investment of available investable funds necessary to maintain maximum effectiveness of the Treasury Department investment portfolio at all times." Section 301.1(h)(1) of The Fiscal Code, 72 P.S. § 301.1(h)(1). The Fiscal Code also mandates that the Treasury Department have custody of securities and their safe keeping; it authorizes the State Treasurer to contract for custodial and securities lending services and to insure against the loss of any cash or securities of which the Treasury Department or the State Treasurer is custodian. Section 303, 72 P.S. § 303.

The Fiscal Code imposes these duties with a concomitant grant of discretion to the officeholder. Although one State Treasurer may contract for services beyond his or her or term, to render such contracts enforceable against a successor with no possibility of termination would be to rob the successor of the exercise of that discretion. In the instant case, Treasurer Hafer would be precluded from exercising that discretion for the duration of her term of office.

■ The custodial and securities lending activities comprising the subject matter of the agreements in question are the powers and duties conferred upon the State Treasurer, as an executive officer and as head of the Treasury Department, by the state constitu-

9. *Id.* at 305–306. We reject the Bank's contention that the factors enumerated by the Supreme Court in *Morris v. School District of Mt. Lebanon Township*, 393 Pa. 633, 144 A.2d 737 (1958), constitute the established test for governmental versus proprietary functions. The *Morris* case addressed issues of sovereign immunity and not repudiation of a forward contract. Although we have used this test in the context of government contracts at the local government level, *County of Butler v. Local 585*, 158 Pa.Cmwlth. 519, 631 A.2d 1389 (1993), we decline to use it in this case, which involves constitutional and statutory powers of an officer of the executive branch of the Commonwealth.

10. Griffith, at 306.

11. *Id.* at 311. The author notes that activities found to be proprietary in the earliest cases have become governmental as society expected and received more types of services from state and local governments. *Id.* at 300.

12. Pa. Const. art. IV, § 1.

13. Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 66.

14. Section 302 of The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. § 302.

15. Section 301.1(h), added by the Act of June 19, 1961, P.L. 468, *as amended*, 72 P.S. § 301.1(h).

tion and by statute. Although custodial and securities lending activities are admittedly functions frequently and principally performed by private enterprise, because the funds in question are state assets and subject to the discretion and control of the State Treasurer, we must conclude that these are functions that the Treasurer should be able to control, free of any restrictions imposed by her predecessors. The prudent management of public funds lies at the core of the constitutionally mandated duties of the Treasurer. A State Treasurer's inability to select and manage the provider of these services impairs her ability to execute policy and to discharge her duties to the Commonwealth with fidelity. The Treasurer should be free to exercise her discretion in these matters as often as she deems necessary to the discharge of her office; by the terms of these amended agreements, Treasurer Hafer is restricted by a predecessor from exercising control over the selection and management of the custodian and its securities lending activities. For these reasons, the custodial and securities lending agreements relate to the Treasurer's governmental powers and as such, the agreements made with Treasurer Knoll cannot bind Treasurer Hafer.

### Public Policy

In a number of contexts, the courts of this Commonwealth have refused to uphold public contracts that unduly bind successor governments.

> It is a mistake to suppose that, because a public official, or indeed any other agent for a known limited term, has power to make a contract, he is authorized thereby to make one for an indefinite or long extended term.... Ordinarily it is limited

in time to the term of the agent who makes it.... This is particularly true of public officials, else those going out of office might so tie the hands of those coming in as to cause serious embarrassment and loss to the public.

*Moore v. Luzerne County,* 105 A. 94, 95, 262 Pa. 216, 220–221 (1918).[16]

Last-minute contracts intended to bind a successor constitute a particularly egregious violation of public policy. In the instant matter, Treasurer Hafer's predecessor and the Bank amended the custody and securities lending agreements in the last two months of the predecessor's term. The intent of the amendments was to extend the agreements beyond the predecessor's term and to prevent the Treasurer Hafer from terminating the agreements for the duration of her term of office.

Finally, we reject the Bank's argument that the Treasurer cannot terminate the custody and securities lending agreements because the Office of Attorney General approved the contracts under the Commonwealth Attorney's Act for legality. The Treasurer's repudiation of the agreements does not pose an objection to their legality, but rather to their binding effect beyond the term of the officeholder who entered into them. Assuming the agreements were a proper delegation, Treasurer Hafer's subsequent repudiation does not render them void ab initio or illegal; the repudiation merely rejects the agreements as of the new term of office.[17]

Accordingly, summary relief is granted in favor of the Treasurer Hafer and the Treasury Department, and the preliminary objections are dismissed as moot.[18]

---

**16.** *See also Scott v. Philadelphia Parking Authority,* 402 Pa. 151, 166 A.2d 278 (1960); *Preston v. Saucon Valley School District,* 666 A.2d 1120 (Pa.Cmwlth.1995), *petition for allowance of appeal denied,* 545 Pa. 673, 681 A.2d 1344 (1996); *Falls Township v. Scally,* 115 Pa.Cmwlth. 56, 539 A.2d 912 (1988).

**17.** The agreements would be ultra vires, and hence void, only if they were forged without proper authority. Although the Bank cites decisions on this issue declaring specific contracts "void" and/or "unenforceable in its entirety," these decisions have not specifically addressed

the issue of whether such a contract is void versus voidable. Given that the legal challenge is generally brought by the successor official or government body, which seeks not to be bound, the requested relief is generally that the contract be declared "void" as of the successor's term of office.

**18.** Application for summary relief may be granted before an answer is filed and before the court disposes of outstanding preliminary objections. *Marshall v. Pennsylvania Board of Probation and Parole,* 162 Pa.Cmwlth. 256, 638 A.2d 451 (1994).

## ORDER

AND NOW, this 26th day of May, 1998, summary relief is granted in favor of the Treasury Department and State Treasurer Hafer. State Street Bank's motion for summary relief is denied. Preliminary objections are dismissed as moot.