**LOBOLITO, INC., Appellant,**

v.

**NORTH POCONO SCHOOL DISTRICT.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 1998.

Decided Dec. 31, 1998.

Guy P. Beneventano, Harrisburg, for appellant.

William J. Rinaldi, Scranton, for appellee.

Before McGINLEY, J., LEADBETTER, J., and NARICK, Senior Judge.

LEADBETTER, Judge.

Lobolito, Inc. appeals from an order of the Court of Common Pleas of Wayne County (trial court), which sustained the preliminary objections of North Pocono School District (District)[1] and dismissed Lobolito's breach of contract action with prejudice.

Lobolito is the owner and developer of a tract of land in Wayne County. On May 15, 1991, the District and Lobolito entered into a Joint Development Agreement (JDA), which provided that Lobolito would develop its land and construct a sewage treatment plant (plant) and that the District would build a new elementary school and utilize the plant constructed by Lobolito. The JDA also provided that either party could terminate the agreement at any time prior to commencement of construction of the plant. In September 1993, Lobolito applied to the then Department of Environmental Resources for an NPDES permit. On December 7, 1994, the School District and Lobolito entered into a Memorandum of Agreement (Agreement) reflecting, *inter alia*, changes in the location

1. Our references to the "District" herein shall also encompass the school board of the District.

of the proposed plant and financing arrangements between the parties. The District agreed to proceed with the construction of the new school at such time as Lobolito could offer the sewage disposal service. The Agreement also provided that:

> Upon execution and delivery hereof, the School District and Lobolito shall terminate the Joint Development Agreement by providing mutual releases to each other, subject however, to the satisfaction of all costs to be jointly shared pursuant to the Joint Development Agreement, as of the date hereof.

R.R. 271a – 272a.

The Department approved the issuance of the NPDES permit on December 15, 1994, which action was subsequently appealed to the Environmental Hearing Board (EHB). On December 6, 1995, the District resolved to not construct the new school and, accordingly, not to utilize the plant. On March 6, 1996, the EHB issued an Opinion and Order remanding the issuance of Lobolito's permit to the Department for reconsideration in light of the fact that the District had decided not to utilize the plant. Thereafter, Lobolito filed an action against the District, alleging a breach of contract and seeking consequential damages. The District filed preliminary objections, demurring on the grounds, *inter alia,* that:

> 26. A school district's determination as to whether a school should or should not be constructed is governmental in nature as its source is derived from Pennsylvania law.
>
> 27. Specifically, 24 P.S. § 7–701 authorizes a school board to provide "suitable school buildings to accommodate all children."
>
> 28. Where a legislative body acts in a governmental, as opposed to a proprietary, capacity, it cannot take any action which binds its successors.
>
> 29. Therefore, the School Board which entered into the Joint Development Agreement and/or Memorandum of Agreement could not bind the School Board which

passed the December 6, 1995 Resolution to its determination that an elementary school would be constructed in Clifton Township.

The trial court granted the preliminary objections on other grounds in an Order dated May 19, 1997, and dismissed Lobolito's complaint with prejudice. Lobolito filed a petition for reconsideration, which the trial court denied, and thereafter appealed to the Superior Court. On May 7, that court entered the following:

MEMORANDUM:

> Lobolito, Inc., appeals from the order of court dated May 19, 1997, in the Court of Common Pleas of Wayne County (Conway, PJ, presiding). As this appeal deals with a contractor's attempt to recover damages when a subsequent school board abandons a project approved by the prior board, this falls within the province and specific expertise of our sister court. *See* 42 Pa.C.S. §762(a)(4); *Byrne v. Alexander,* 56 Commonwealth Ct. 206, 424 A.2d 602 (1981)(Subsequent board not necessarily bound by previous board's decisions). Therefore, we transfer this appeal to the Commonwealth Court.
>
> Appeal transferred to Commonwealth Court.

On appeal, Lobolito argues that: (1) the execution of the Agreement did not constitute the performance of a governmental function by the District, which bound the successor school board; (2) its complaint sufficiently avers breaches of the JDA and the Agreement and states a cause of action; and (3) the trial court abused its discretion in dismissing its complaint with prejudice without granting Lobolito an opportunity to amend.[2]

 In the performance of governmental functions, as opposed to proprietary functions, a municipal board having legislative authority may not take action which will bind its successors. *County of Butler v. Local 585, Service Employees Int'l Union, AFL–CIO,* 158 Pa.Cmwlth. 519, 631 A.2d 1389, 1392 (Pa.Cmwlth.1993). In other words, the board cannot enter into a contract whose duration extends beyond the term for which

---

**2.** Because of our disposition of the first issue, we need not address the second.

the members of the board were elected. *Falls Township v. McManamon,* 113 Pa. Cmwlth. 504, 537 A.2d 946, 947 (Pa.Cmwlth. 1988), *quoting Mitchell v. Chester Housing Auth.,* 389 Pa. 314, 321, 132 A.2d 873, 877 (1957).[3] We must determine, therefore, whether the District was performing a governmental function when it executed the Agreement.[4]

In general, proprietary functions have been characterized as those that a legislative board is not statutorily required to perform, may be carried on by private enterprise or are undertaken as a means to raise revenue. *County of Butler,* 631 A.2d at 1392–93.[5] On the other hand, governmental functions include those that a legislative board is statutorily entrusted with performing, are indispensable to the proper functioning of government and, because they implicate the policy making function, demand that current officeholders be able to control, free of restrictions imposed by predecessors. *State Street Bank & Trust Co. v. Commonwealth, Treasury Dep't,* 712 A.2d 811, 813–814 (Pa.Cmwlth.1998). These tests, however, merely attempt to articulate factors which will aid the court in resolving the essential inquiry: *whether enforcement of the contract would impair, to any significant degree, the new body's exercise of its policymaking role.* This distinction is critical, because the doctrine here at issue has its roots in our fundamental notions of democratic government. We select public officials, legislative or executive, whom we believe will carry out the policies intended by the electorate. If they fail to do so, or if the people conclude that new policies are in order, they can be voted out of office. To allow an elected body to perpetuate its policies beyond its term of office would frustrate the ability of the citizenry to exercise its will at the ballot box. It is only because of these fundamental concerns that we allow otherwise valid contracts to be undone, and we must carefully evaluate each case to insure that innocent third parties are not unnecessarily harmed for the sake of democratic principles. As noted long ago by another court, "The true test is whether the contract itself deprives a governing body, or its successor, of a discretion which public policy demands should be left unimpaired." *Plant Food Co. v. City of*

3. Lobolito has cited cases containing seemingly unequivocal pronouncements to the contrary. In *Detweiler v. School District of Borough of Hatfield,* our Supreme Court stated that, "Subsequent boards are always bound by contracts validly made by former members." 376 Pa. 555, 567, 104 A.2d 110, 117 (1954), *citing Horvat v. Jenkins Township Sch. Dist.,* 337 Pa. 193, 195, 10 A.2d 390, 391 (1940). Similarly, in *Altman v. School District of Uniontown,* 334 Pa. 336, 340, 5 A.2d 896, 897 (1939), it held, "Since the contract was valid when made, a subsequent board could not undo what the former members had legally done...." We are not persuaded by these cases for a number of reasons. First, none of these cases addresses the distinction between governmental and proprietary functions, although we would be hard pressed to characterize the contract in *Detweiler* [agreement with other school districts to establish a joint secondary school] as proprietary. Second, the propositions as stated appear to be flatly inconsistent with more recent [as well as some older] cases, which we believe state the law more accurately. Most fundamentally, however, neither *Detweiler* nor *Altman* involved the right of a subsequent board to disavow future performance of a contract entered into by its predecessor body. *Detweiler* was an action by taxpayers to *preclude* the successor board from going forward with a preexisting contract which the new board wanted to continue. *Altman* involved a claim by an architect to be paid for work already completed when his contract was terminated, and the court carefully distinguished this situation from claims seeking more than the value of work already performed. 334 Pa. at 342, 5 A.2d at 898. Hence, when the facts of these cases are considered rather than their broad language, they are not inconsistent with our holding today.

4. We limit our discussion to the Agreement, and do not discuss the JDA, because the JDA was terminated upon the execution of the Agreement. Page three of the Agreement provides, "WHEREAS, ... Lobolito and the School District propose to terminate the Joint Development Agreement in accordance with the provisions hereof." Further, Section eight of the Agreement provides:

> Upon execution and delivery hereof, the School District and Lobolito shall terminate the Joint Development Agreement by providing mutual releases to each other, subject however, to the satisfaction of all costs to be jointly shared pursuant to the Joint Development Agreement, as of the date hereof.

R.R. 272a. Lobolito does not contend that these conditions were not met.

5. It may be noted that we rejected the use of this test in *State Street Bank & Trust Co. v. Commonwealth, Treasury Dep't,* 712 A.2d 811, 814 n. 9 (Pa.Cmwlth.1998).

*Charlotte,* 214 N.C. 518, 199 S.E. 712, 714 (N.C.1938).

 Here, the District alone is vested with statutory authority to establish school facilities,[6] and the determination of whether and where to build a new school clearly encompasses a governmental function. Lobolito argues, nonetheless, that the District contracted not to build a school, but to utilize its sewage disposal service, an arguably proprietary function. We disagree. Pursuant to the terms of the Agreement itself, the District was bound to proceed with the construction of the new school. Moreover, the District's use of sewage facilities was clearly ancillary to the use of the new school building, and these separate aspects of the contract could not under these circumstances be treated separately. Holding the new board to the sewage facility portion alone would impermissibly chill its exercise of discretion with regard to its governmental function. Thus the succeeding board was permitted by law to disavow the Agreement.[7] Since no breach of contract occurred, Lobolito was not entitled to consequential damages.[8]

 The trial court properly concluded, therefore, that Lobolito's complaint failed to state a cause of action, and appropriately sustained the District's preliminary objections. Moreover, the trial court did not err in refusing leave to amend. "Where the initial pleading reveals that the complaint's defects are so substantial that amendment is not likely to cure them, and that the prima facie elements of the claim or claims asserted will not be established, the right to amend is properly withheld." *Feingold v. Hill,* 360 Pa.Super. 539, 550, 521 A.2d 33, 39 (1987).

Accordingly, the order of the trial court is affirmed.

---

6. Section 701 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 7–701, provides in pertinent part:

 The board of school directors of each district shall provide the necessary grounds and suitable school buildings to accommodate all the children between the ages of six and twenty-one years, in said district, who attend school.

7. As was the case in *State Street [see* 712 A.2d at 815 n. 17], this contract was voidable and not void ab initio because execution of the Agreement by the District was in accordance with its powers and responsibilities under the School Code. *See* n. 6 above. *Compare Scott v. Philadelphia Parking Authority,* 402 Pa. 151, 166 A.2d 278 (1960), involving the inherent lack of power of a municipality, absent statutory authority, to bargain away its right of summary dismissal of appointed officers and employees.

8. Lobolito makes no claim that the District failed to comply with its obligations before the contract was disavowed.

## ORDER

AND NOW, this 31st day of December, 1998, the order of the Court of Common Pleas of Wayne County in the above captioned matter is hereby affirmed.